62 327
65 467
62 327
66 280
62 327
71 330

ALDACE F. WALKER *et al.*, *Receivers*, v. LENA PRICE.

No. 11,751.* ( 62 Pac. 1001.)

1. RAILROADS—*Limited Ticket—Purchaser Bound by Acceptance.* A round-trip railroad ticket contained the following printed on its face: "In consideration of the reduced rate at which this ticket is sold, it is hereby agreed that it will not be good for going passage after midnight of the date named in attached coupon, nor for return passage after midnight of date punched in margin hereof." The date referred to, indicated by punch marks, was May 5, 1894. Plaintiff used the going portion of the ticket within the time limit. She started to return on May 27, 1894, twenty-two days after the time limit had expired, and was denied the right to travel on the ticket. *Held*, that the ticket was not ambiguous as to its terms, nor the conditions doubtful in their meaning, and that the acceptance of the same and its use constituted a contract between the carrier and passenger which, being in writing, could not be contradicted or varied by parol evidence.

2. ———— *Case Distinguished.* The case of *K. C. St. J. & C. B. Rld. Co. v. Rodebaugh*, 38 Kan. 45, 15 Pac. 899, distinguished.

Error from court of appeals, southern department; A. W. DENNISON, B. F. MILTON, and M. SCHOONOVER, judges. Opinion filed December 8, 1900. Reversed

*A. A. Hurd*, and *O. J. Wood*, for plaintiffs in error.

*J. D. Houston*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : On the 27th day of May, 1894, plaintiff below, Lena Price, took passage at Wichita on one of the passenger-trains of the Atchison, Topeka & Santa Fe Railroad Company, then operated by receivers, intending to ride thereon to Woodward, I. T. After the train had started, she presented to the conductor the

* For opinion by the court of appeals, see 9 Kan. App. 720, 59 Pac. 1102.—REP.

return portion of a ticket from Wichita to Woodward, I. T., as follows:

| I agree to conditions named. Purchaser. | ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY. RETURN-TRIP COUPON. Good for one first-class passage unless otherwise indorsed. WICHITA TO WOODWARD, I. T. When stamped by Company's agent and subject to the following contract: In consideration of the reduced rate at which this ticket is sold, it is hereby agreed that it will not be good for going passage after midnight of the date named in attached coupon, nor for return passage after midnight of date punched in margin hereof, and that it is strictly non-transferable. Conductors will take it up and collect full fare if presented by other than the person whose signature is herein, or if more than one date is canceled, or if it shows alteration. Form —. GEO. T. NICHOLSON. Local 3. *General Passenger and Ticket Agent.* Series 13. | 1893 O 1895 1896 1897 1898 |

| 10453 | Jan | Feb | Mar | Apr | O | June | July | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Day: 1 | 2 | 3 | 4 | O | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 |

She was told by the conductor that the time limit of the ticket had expired, and that she would have to get off at Derby, the next station. This she did under what the jury found to be "forcible persuasion." The petition of plaintiff in the court below alleged in general terms that she was rightfully riding on the defendants' train as a passenger for hire and entitled to be carried from Wichita to Woodward, I. T.; that she was directed and compelled, without right or justice, and against her consent, to leave the car and train, and was by the conductor negligently and wrongfully ejected therefrom, to her damage, etc.

On the trial Frank Price, a brother of plaintiff below, testified, over the objections of defendants, that he had purchased the ticket for his sister at Woodward, I. T., for the round trip from the latter place to Wichita and return; that he had asked and paid for an unlimited ticket, and that he did not notice the punch marks thereon; that he saw it was from Wood-

ward and gave no more attention to it. There was no testimony showing that the witness Price, who bought the ticket, told his sister that the same was unlimited ; and the jury, in response to a particular question of fact, answered that he did not inform her of the conversation had by him with the ticket agent at Woodward. Verdict and judgment were rendered for the plaintiff below, and the case was affirmed by the court of appeals.

Counsel for plaintiffs in error contend, and have cited many authorities to sustain their position, that the conductor must ascertain the rights of a passenger to travel from the ticket alone ; that a ticket being presented to him which showed that a prior right of the passenger to travel had expired, he was fully justified in putting plaintiff off the train, and his justification exempted the company from liabilty ; that the expulsion being rightful, if the plaintiff below had bought and paid for an unlimited ticket and was furnished a limited one by the agent of the company, her remedy was an action for breach of the contract to carry, and not in tort. This contention is combated by counsel for defendant in error, and many cases cited holding that while the conductor himself in such case may be exonerated from liability, the plaintiff having bought an unlimited ticket, the corporation is liable for her ejection from the train, notwithstanding the conductor had no other guide for his conduct toward the passenger than the language of the ticket, and that a recovery is not restricted to damages for breach of contract.

The cases are not at all harmonious on this question. (4 Ell. Railr. § 1594.) In our view of the law applicable to the facts presented in the record, it is unnecessary to decide which side is right in its conten-

tion on this question. The plaintiff below had the round-trip ticket in her possession for about five weeks, and within the limit of time stamped on the going part of the same she traveled from Woodward, I. T., to Wichita. The time limits were plainly indicated on the ticket, and she was in no manner deceived as to its conditions, for nothing had been said to her intimating that when the ticket was purchased the agent of the company stated it was unlimited. She could have no grounds to doubt that the time limit expressed in the ticket was binding on her, and no reason whatever to believe that the conditions thereof had been waived by the company or its agent. The conductor also was in ignorance of any alleged contract or agreement different from that printed on the ticket.

Much stress is laid on the fact that the ticket was unsigned at the place left for signature on the margin. The following language is printed thereon:

"In consideration of the reduced rate at which this ticket is sold, it is hereby agreed that it will not be good for going passage after midnight of the date named in attached coupon, nor for return passage after midnight of date punched in margin hereof, and that it is strictly non-transferable. Conductors will take it up and collect full fare if presented by other than the person whose signature is hereon."

The evident purpose of requiring this ticket to be signed was to render it non-transferable and to identify the purchaser. The lack of a signature did not relieve the holder from an observance of that condition which required the ticket to be used for return passage before the date punched in the margin. In *Dangerfield v. Railway Co.*, ante, p. 85, 61 Pac. 405, it was said:

"Limited round-trip tickets, like the one presented by Dangerfield, are in common use throughout the

country, and the conditions written upon the face of such tickets, and which constitute the contract between the parties, are not unreasonable or invalid. . . . Attention is called to the fact that the original purchaser did not sign the ticket when it was issued, but it is clear that his failure to sign did not eliminate the conditions of the contract. If these were binding upon the company, they were equally binding upon the purchaser, whether signed by him or not. Nor does the fact that the first company omitted or dispensed with the signing of the ticket affect the right of the second company to insist on the conditions, and it did not make the ticket transferable." (See, also, Hutch. Carr. § 575; 1 Fett. Carr. Pass. § 285; *Quimby v. Boston & Maine Railroad*, 150 Mass. 365, 23 N. E. 205, 5 L. R. A. 846.)

There is a distinction between tickets which are mere tokens or checks not purporting to be contracts between the carrier and the purchaser, but which only indicate the route over which the passenger is to be carried, and contract tickets like that in the present case. This difference was noted in *Fonseca v. Cunard Steamship Co.*, 153 Mass. 553, 27 N. E. 665, wherein it was held that one who accepts a contract, and proceeds to avail himself of its provisions, is bound by the conditions and stipulations expressed in it whether he reads them or not. In Elliott on Railroads, volume 4, in a note to section 1593, the following rule is deduced from numerous authorities cited:

"We think that a ticket may be both a receipt and a contract, and, in so far as it is a contract, its terms should be held binding. Many of the cases above cited hold that a mere notice limiting liability or the like, printed on the ticket, is not binding because it is not a contract, but when shown to be part of the contract, if it is such as the law permits, we think it is binding, and there can, we think, be no doubt that such is the case as to terms and stipulations in the

contract part of the ticket, especially where it is signed by the purchaser.''

In the same section, the following on the subject is said:

''But the terms of the contract, or certain conditions and limitations which enter into and form part of the contract, are frequently written or printed on the face of the ticket, and where such is the case we think the better rule is that a passenger has no right to rely on the representations of an agent or conductor, which are contrary to its express limitations and conditions.''

In the case of *K. C. St. J. & C. B. Rld. Co. v. Rodebaugh*, 38 Kan. 45, 15 Pac. 899, relied on by counsel for defendant in error, the loss of a passenger's baggage was involved. There was a declaration printed on the ticket, as follows: ''None of the companies represented in this ticket will assume any liability on baggage, except for wearing apparel, and then only for a sum not exceeding $100.'' There was a blank space for the purchaser's signature, but it was not filled. It was decided that the above condition was not binding on the passenger. The language used is referred to in the opinion as a declaration of the company. It was merely an assertion on the part of the carrier—a proclamation that it absolved itself from liability for loss exceeding $100. The case at bar is materially different. Here there was something more than a notice to the passenger that the ticket must be used within the limited time. The words used in the ticket in the present case were indicative of a contract between the parties regarding the time within which the ticket must be used. (Ell. Railr. § 1593, and note.)

It follows logically, when it is decided that the acceptance and use of such a ticket as that held by the defendant in error constituted a contract between her

Railroad Co. v. Price.

and the carrier, that its positive terms, being expressed in writing, cannot be contradicted or varied by parol evidence.   Nor can oral agreements relating to the subject expressed in the written ticket, made before or at the time it was issued, be received in evidence in contradiction of its stipulations.   This is but the application of an old and well-settled rule of evidence. ( *Rodgers v. Perrault*, 41 Kan. 385, 21 Pac. 287 ; *Willard v. Ostrander*, 46 id. 591, 26 Pac. 1017, and cases cited.)   There is no ambiguity appearing in this con-. tract of carriage, or the use of words having a doubtful. meaning.   So far as the knowledge of plaintiff below is concerned, it is not pretended that she, at any time prior to her alleged injury, had any other information regarding her rights as a passenger beyond those derived from the expressed stipulations of the ticket. The attempt, therefore, of the plaintiff below to impeach the written terms of the ticket by the parol testimony of her. brother must fail of its purpose, and the testimony held to be inadmissible.

Holding this view of the case, it follows that the plaintiff below was not wrongfully put off the train. The judgment of the court of appeals and district court will be reversed, with directions to the latter court to enter judgment on the findings of the jury in favor of the defendants below.