F. A. ROLFS v. THE ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY.

No. 12,940.   (71 Pac. 526.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Ticket Conclusive Evidence.* A railroad ticket containing a full and unambiguous printed contract, signed in ink by the purchaser, that it should expire on a date shown by punchmarks on its margin, is conclusive evidence to the train conductor of the contract between the passenger and the carrier as to the time the ticket continues in force.

2. ———— *Parol Testimony Inadmissible to Vary Terms of Ticket.* In an action of tort for his expulsion from the train, brought by the purchaser of a ticket of the character mentioned in the preceding paragraph, who attempted to use it after the date of expiration shown by the marginal punch-marks, parol testimony of statements made by the ticket agent at the time of sale, contradictory of the contract contained in the ticket, is inadmissible.

Error from Leavenworth district court; J. H. GILLPATRICK, judge. Opinion filed February 7, 1903. Affirmed.

*Fenlon & Fenlon*, and *Dawes & Wulfekuhler*, for plaintiff in error.

*A. A. Hurd*, for defendant in error.

The opinion of the court was delivered by

BURCH, J.: F. A. Rolfs commenced an action in the district court of Leavenworth county against the Atchison, Topeka & Santa Fe Railway Company to recover damages consequent upon his expulsion from one of the defendant's passenger-trains on June 12, 1896. Concerning his right to be transported, he alleged as follows:

"That on the 12th day of May, 1896, said plaintiff purchased from the defendant, through its agent at

Norman, Indian Territory, a book of mileage containing tickets for one thousand miles' transportation over the lines of the said Atchison, Topeka & Santa Fe Railway Company's road, and lines of road operated by it, by virtue of which purchase said defendant agreed and promised to convey and carry said plaintiff over said defendant's roads and roads operated by it, to the extent of one thousand miles, within one year from date of said ticket.''

The substance of the plaintiff's evidence relating to his right to be transported appears in the following questions and answers :

''Ques. Mr. Rolfs, did you purchase a ticket of the agent of the Santa Fe company at Norman, Indian Territory, on the 12th of May, '96? Ans. I purchased a ticket from an agent there in Norman, Oklahoma.

''Q. That day? A. Yes, a little before four o'clock in the morning.

''Q. Will you look at this ticket or book I now hand you and state whether or not that is the ticket or book of mileage that you purchased from the agent of the Santa Fe Company at Norman station on the 12th of May, 1896? (Book marked 'Exhibit No. 1.') A. Yes, sir ; that is the ticket. No. 441.

''Q. Is this your signature (showing witness ticket)? A. Yes, sir.

''Q. You wrote that? A. Yes, sir.

''Q. Is this the book of mileage that you tendered to the conductor upon the occasion when he refused to accept it? A. Yes, sir.

''Q. Mr. Rolfs, when you presented the ticket to the conductor, was it accepted? A. No, sir ; he didn't accept it ; he said it was expired.

''Q. What was stated, Mr. Rolfs, when the conductor asked you for your fare, by you to him ? A. I told him the ticket was legal tender ; it was only one month old and it was good for a year. ·

''Q. Now, Mr. Rolfs, did you hand him the ticket at that time? A. Yes, sir.

"Q. What did he say ?    A. He said it was thirteen months old.

"Q. Did he accept the ticket from you ?    A. No.

"·Q. Did he demand your fare ?    A. He demanded the fare ; yes.

"Q. Did you pay it?    A. No, I didn't pay it.

"Q. Now, Mr Rolfs, please state to the court and jury just what took place between you and the conductor of the Santa Fe train at the depot or station at Diamond Springs, when you reached there.    A. I told him if he didn't believe me he could telegraph. He said he couldn't get an answer.    I told him, yes he could ; there was an operator there at Norman — I bought a ticket at four o'clock in the morning, and he could get an answer there, if he didn't believe me.

"Q. If he didn't believe you about what?    A. My statement that it was only a month old ; he could telegraph and find out about it; if he didn't believe me.

"Q. Did you, or not, call the attention of the conductor to the fact that you yourself had purchased that ticket and that it had not yet expired ?    A. Yes, I stated that fact.

"Q. What did he say in response to your statement that you yourself had purchased the ticket and that it had not yet expired ?    A. He said it was thirteen months old, and he couldn't get no answer from the operator.

"Q. And he didn't accept the ticket?    A. No, he didn't."

Some other questions were propounded and answers returned on the same subject, but no additional facts were adduced.    Sufficient evidence to show plaintiff's removal from the train and to establish damages was introduced.    The ticket itself was not offered in evidence.    A demurrer to the evidence was interposed, and, pending its consideration, plaintiff further offered to show :

"That the agent from whom the ticket was pur-

Rolfs v. Railway Co.

chased stated to the plaintiff at the time he purchased it that it was good for one year from the date of purchase, and, also, to prove by Mr. Saunders, the conductor of the train, that such tickets at that time were sold good for one year from date of purchase.''

This offer was rejected.   The demurrer to the evidence was sustained, and judgment was rendered against the plaintiff for costs.   Of this judgment he complains here.

Apparently, under the plaintiff's own view of the case, his right to passage upon the train depended on his ticket, and it is somewhat difficult to perceive how he could recover for a violation of right originating in a contract which he withheld from the court. Since the ticket was suppressed from the evidence, the court was left unadvised as to its contents, terms, and conditions, and the demurrer was rightfully sustained.

The original ticket, however, is attached to the case-made, and it may have been treated by all parties as if in evidence.   If so, it destroyed the plaintiff's case. The ticket is an ordinary mileage book.   On the front cover appears the following notice:  ''Void for passage after date canceled by punch.''   On the back cover appears the notice following, and a contract, the essential portions of which also follow, the signature at the end of the contract being in ink:

''THIS TICKET EXPIRES ON DATE PUNCHED IN MARGIN.
''Local Form 66.   Series 3.   No. 441.   Sold under this contract.''
''7th.   This contract must be signed, in ink, by the person to whom the ticket is issued, before being presented for passage, and the holder must identify himself by his signature whenever so required by authorized employees of this company.''
''10th.   This ticket expires on the date canceled by

punch in margin, after which it will be of no value for passage, but will be redeemable, at the company's option, if presented by the original purchaser (within its limit) on basis of charging tariff rate for mileage used, refunding difference.

"11th. One hundred and fifty pounds of baggage will be checked free hereon.

"I agree to use this ticket in conformity with the conditions and notices hereon governing its use."

"Signature of person who is alone authorized to use this ticket.   F. A. ROLFS, purchaser.   (Sign in ink.)"

On the inside of the first cover is the official stamp of the company.   The month and day of the stamp are May 12.   The last figure of the number indicating the year is sufficiently obscure to raise a question as to whether it is 1895.   The date of expiration punched in the margin is May 12, 1896.

It will be observed that the ticket says nothing of the date of purchase or date of official stamp, and so far as its express provisions are concerned the date of stamp or of sale has no effect.   There are, however, two notices on the ticket, one on the front and one on the back, stating that the punched date in the margin fixes absolutely the limit of the ticket.   There is a contract signed in ink that the ticket will be used according to these notices; and paragraph 10 of the signed contract is given up to a stipulation relating to expiration on the day punched in the margin, and the rights of the holder to redemption after that date.

When this ticket was presented to the conductor it was with plaintiff's unambiguous written declaration that it was invalid.   This declaration the conductor accepted and demanded payment of fare.   Then plaintiff sought to impeach the written statement by an oral one.   Was the conductor bound to accept the oral contradiction?   May each passenger on a train

require the conductor to hear, and weigh, and verify a story relating to his right to ride in direct opposition to the language of his ticket? The answer to this question has already been indicated by the approval of *Frederick v. M. H. & O. R. R. Co.*, 37 Mich. 342, 26 Am. Rep. 531, in *A. T. & S. F. Rld. Co. v. Long*, 46 Kan. 260, 26 Pac. 682.

In *Frederick v. M. H. & O. R. R. Co.*, supra, it was said :

"How, then, is the conductor to ascertain the contract entered into between the passenger and the railroad company where a ticket is purchased and presented to him? Practically there are but two ways—one, the evidence afforded by the ticket; the other, the statements of the passenger contradicted by the ticket. Which should govern? In judicial investigations we appreciate the necessity of an obligation of some kind and the benefit of a cross-examination. At common law parties interested were not competent witnesses, and even under our statute the witness is not permitted, in certain cases, to testify as to facts which, if true, were equally within the knowledge of the opposite party, and he cannot be procured. Yet here would be an investigation as to the terms of a contract, where no such safeguards could be thrown around it, and where the conductor, at his peril, would have to accept of the mere statement of the interested party. I seriously doubt the practical workings of such a method, except for the purpose of encouraging and developing fraud and falsehood, and I doubt if any system could be devised that would so much tend to the disturbance and annoyance of the traveling public generally. . . . As between the conductor and passenger, and the right of the latter to travel, the ticket produced must be conclusive evidence, and he must produce it when called upon, as the evidence of his right to the seat he claims."

In *Hufford v. Grand Rapids & Ind. Ry. Co.*, 53 Mich. 118, 18 N. W. 580, it was said :

"In *Frederick v. Marquette &c. R. R. Co.*, 37 Mich.

342, s. c. 26 Am. Rep. 531, it was decided that, as between the conductor and the passenger, the ticket must be the conclusive evidence of the extent of the passenger's right to travel. No other rule can protect the conductor in the performance of his duties, or enable him to determine what he may or may not lawfully do in managing the train and collecting the fares. If, when a passenger makes an assertion that he has paid fare though, he can produce no evidence of it, the conductor must at his peril concede what the passenger claims, or take all the responsibilities of a trespasser if he refuses, it is easy to see that his position is one in which any lawless person, with sufficient impudence and recklessness, may have him at disadvantage, and where he can never be certain, if he performs his apparent duty to his employer, that he may not be subjected to severe pecuniary responsibility. Such a state of things is not desirable, either for railroad companies or for the public. The public is interested in having the rules whereby conductors are to govern their action certain and definite, so that they may be enforced without confusion and without stoppage of trains; and if the enforcement causes temporary inconvenience to a passenger, who by accident or mistake is without the proper evidence of his right to a passage, though he has paid for it, it is better that he submit to the temporary inconvenience, than that the business of the road be interrupted to the general annoyance of all who are upon the train. The conductor's duty, when the passenger is without the evidence of having paid his fare, is plain and imperative, and it can serve no good purpose and settle no rights to have a controversy with him. The passenger gains nothing by being put off the car, and loses nothing by paying what is demanded and staying on.''

This opinion has the authority of Chief Justice Cooley's great name, and its doctrine is preferred to certain statements in a later decision by the supreme court of the same state on the same subject.

Such being the law, the plaintiff was negligent in attempting to use the ticket.   The language of the ticket was plain and unequivocal.   The notices were ample and conspicuous.   It cannot be contended that they had not been brought to plaintiff's attention or that he had not had time to familiarize himself with them, or that they were not understood.   He testified that he went out on the road for his own house, and, hence, had some experience in travel, and the ticket itself was not of the kind used by the traveling public generally.   If the agent made a mistake, he subscribed to it, and could not be free from fault in attempting to use a ticket to the invalidity of which he certified.

The offer of the plaintiff to show the statement of the agent that the ticket was good for a year from date of sale was properly rejected, for the reason that the part of the contract relating to the time of expiration of the ticket was in writing, and, so far as the parties committed their agreement to writing, the instrument, and not oral statements must control.

In Elliott on Railroads, volume 4, section 1593, it is said :

"A ticket is evidence of a contract to carry and the right to passage, but the contract itself is implied by law except in so far as it is expressed in the ticket. Upon the theory that it is not itself the written contract, parol evidence has been held admissible to prove the terms of the contract in fact entered into between the company and the passenger, or the representations made by the agent, at the time the ticket was purchased, as to stop-over privileges or the like.   But the terms of the contract, or certain conditions and limitations which enter into and form part of the contract, are frequently written or printed on the face of the ticket, and where such is the case we think the better rule is that a passenger has no right to rely upon the representations of an agent or conductor which are contrary to its express limitations and conditions."

This doctrine was approved in *Railroad Co. v. Price,*
62 Kan. 327, 62 Pac. 1001, where it was also said :

"It follows logically, when it is decided that the
acceptance and use of such a ticket as that held by
the defendant in error constituted a contract between
her and the carrier, that its positive terms, being ex-
pressed in writing, cannot be contradicted or varied
by parol evidence.   Nor can oral agreements relat-
ing to the subject expressed in the written ticket,
made before or at the time it was issued, be received
in evidence in contradiction of its stipulations.   This
is but the application of an old and well-settled rule
of evidence. (*Rodgers v. Perrault,* 41 Kan. 385, 21 Pac.
287 ; *Willard v. Ostrander,* 46 id. 591, 26 Pac. 1017, and
cases cited.)   There is no ambiguity appearing in this
contract of carriage, or the use of words having a
doubtful meaning."

A special rule of evidence cannot be adopted for a
contract of this character.

Certain cases cited by plaintiff in error as decisive
of this one are not so, and serve to illustrate the rule.
Thus, in *Erie Railroad Co. v. Winter,* 143 U. S. 60, 12
Sup. Ct. 356, 36 L. Ed. 71, a passenger bought a ticket
and asked for a stop-over privilege.   He was told by
the agent that he must arrange the stop-over with the
conductor.   The conductor punched his ticket and
told him that was sufficient to entitle him to the
privilege.   In taking a train after making the stop
the punched ticket was declined, and upon non-pay-
ment of fare he was put off.   The syllabus reads :

"Parol evidence of what is said between a passen-
ger on a railroad and the ticket-seller of the company
at the time of the purchase by the passenger of his
ticket is admissible as going to make up the contract
of carriage and forming part of it."

But it will be observed that the stop-over portion of
the contract was independent of, and additional to, the

ticket and, therefore, provable by evidence independ-
ent of, and additional to, the ticket. The terms of the
ticket were not contradicted. If the ticket had con-
tained an express contract that it would be used with-
out stop-over, which contract the traveler had signed,
a different principle would have been applied.

In *Murdock v. Boston & Albany Railroad*, 137 Mass.
293, 50 Am. Rep. 307, the syllabus reads :

"If the ticket-seller of a railroad corporation deliv-
ers to a passenger a ticket with a hole punched in it,
and assures him that the ticket entitles him to be
carried to his place of destination, when in fact, by
the rules of the corporation, it does not, and the pas-
senger is expelled by the conductor from the train of
cars for refusing to pay additional fare, he may main-
tain an action therefor against the corporation."

But the opinion states :

"There was nothing on their face to show the con-
trary to the plaintiff, and he took and paid for them
on the strength of these explanations and assurances
of the ticket-seller. . . . The ticket-seller assumed
to know, and gave assurances which the plaintiff had
a right to rely upon, and which he did rely on. If,
when the conductor refused to accept the punched
ticket, it had appeared on an inspection of it that
there had been a mistake, and that it did not on its
face purport to be good for a passage over that part of
the defendant's road, and that the ticket-seller had de-
livered to the plaintiff a good ticket upon some other
railroad, or to some place which had already been
passed, when the mistake was discovered, and it was
found that the plaintiff had through inadvertence ac-
cepted a ticket which on its face was plainly insuffi-
cient, then this case would have fallen within the
doctrine of the recent decision in *Bradshaw v. South
Boston Railroad*, 135 Mass. 407, and it would have
been the duty of the plaintiff to yield for the time be-
ing, and pay his fare anew, or withdraw from the
car."

In *Ellsworth v. Chicago, B. & Q. Ry. Co.*, 95 Iowa, 98, 63 N. W. 584, 29 L. R. A. 173, a passenger bought a ticket which, by a mistake of the agent in stamping it, bore a date prior to that of the purchase. The ticket, however, contained the provision "continuous passage within one day of date of sale." No reference was made to the date of stamp. The face of the ticket, so far as the passenger was concerned, made the date of the stamp immaterial. He could rely on its express provisions, and was, therefore, not negligent in attempting to use it.

Most of the cases cited by plaintiff in error are distinguishable from the one under review. Some of them, however, are irreconcilable with the views herein expressed, and, so far as they may be so, cannot be approved.

Whatever remedy the plaintiff may have, if the ticket was wrongfully limited by the agent selling it, it is not for a tortious removal from the defendant's train.

The judgment of the district court is affirmed.

All the Justices concurring.