INEZ JEVONS v. THE UNION PACIFIC RAILROAD COMPANY.

No. 13,833. (78 Pac. 817.)

SYLLABUS BY THE COURT.

1. RAILROAD—*Incorrect Ticket—Expulsion of Passenger.* Where a railroad ticket correctly recites the date of its issuance, but is marked with a punch in a manner that, according to its printed statements, indicates that it had expired prior to that date, it cannot be said, as a matter of law, that it is for this reason void, and that its holder may not recover damages for being expelled from a train when he presents it for passage.

2. PRACTICE, DISTRICT COURT—*Peremptory Direction of Verdict.* Oral evidence in support of an affirmative defense, even if not contradicted, will not authorize a trial court peremptorily to direct a verdict for the defendant.

3. RAILROADS—*Transfer of Ticket Upheld.* A round-trip railroad ticket containing provisions that it shall be used only by the original holder whose signature it bears, but not, in fact, signed by any one, which is sold with the express understanding that it shall be used by A. in going to, and by B. in returning from, the place of destination, is not void when presented by B. upon such return passage, after having been used by A. for the first part of the journey.

Error from Clay district court; SAM KIMBLE, judge. Opinion filed December 1, 1904. Reversed.

*Waters & Waters,* and *R. C. Miller,* for plaintiff in error.

*N. H. Loomis, R. W. Blair,* and *H. A. Scandrett,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: Inez Jevons sued the Union Pacific Railroad Company for damages arising from her ejection from one of defendant's trains. A demurrer to the plaintiff's evidence was overruled, but after the evidence of both parties had been received the court peremptorily directed a verdict for the defendant, upon

which judgment was rendered, from which the plaintiff now prosecutes error.

The evidence in behalf of the plaintiff was to this effect: On July 9, 1900, her father, W. P. Gates, applied to defendant's ticket agent at Wakefield for two tickets from that point to Kansas City and return, one to be used by himself for the round trip, and the other to be used for passage to Kansas City by his wife and, for the return, by his daughter, the plaintiff. He was given two tickets, represented as being adapted to his purpose and good for use at any time within thirty days. Upon the face of each, with other matter, the following was printed:

"This ticket is sold at a reduced rate, and the purchaser accepts it subject to all the conditions on the face, back and going coupon hereof, and its acceptance and use is an acceptance of each and every of said conditions. If this ticket or contract bears no cancelation or stamp other than the ordinary dating stamp, the holder is entitled to a *first-class passage at any time within thirty days* from the *date of sale stamped on the back hereof*. If this ticket has 'L' punched on margin it is purchased and issued as a limited ticket, and it is expressly agreed that it will be used for passage by the purchaser within the date canceled by 'L' punch in margin, and will be void after said date, and will not be honored under any circumstances after the expiration of thirty days from date stamped on back."

Figures on the margin representing the year 1900, the month of July, and the 5th day of the month, were perforated with a punch shaped like the letter "L." On the back was a stamp reading: "Issued by the U. P. Railroad Co. July 9, 1900. Wakefield, Kan." The tickets, although not signed by any one, also bore the words:

"This ticket is *not transferable*, and if presented by

any other than the original holder, whose signature is hereon, the conductor will take it up and collect full fare."

On these tickets Gates and his wife rode to Kansas City. The conductor to whom they were presented told Gates that they were dated wrong and that he would better have them fixed, but did not tell him that they would not answer for the return trip without change. Gates understood that what was meant was merely that as the tickets stood they must be used within thirty days from July 5, whereas they should have been good for thirty days from July 9 ; but, as he intended returning before the time would expire on either basis, he considered it unnecessary to have any correction made, and dismissed the matter from his mind. On July 17 Gates and the plaintiff took the defendant's train at Kansas City for Wakefield. The plaintiff tendered one of the tickets to the conductor, who refused to honor it, and required her to leave the train. The evidence introduced by defendant tended to show that the "L" punch-marks on the tickets were the result of a mistake on the part of the agent who sold them ; that he had punched a number of tickets in anticipation of a large demand on the Fourth of July, and by inadvertence sold two of these to Gates ; that the matter was fully explained to, and understood by, Gates at the time of his trip to Kansas City, and that he was instructed how to have the error corrected while at that place.

The defendant in error claims that the case falls within the rule announced in *Rolfs v. Railway Co.*, 66 Kan. 272, 71 Pac. 526, that a railroad ticket containing a full and unambiguous printed contract is conclusive evidence to the train conductor to whom it is presented of the rights of the passenger, and that

consequently no action for damages will lie for a re-
fusal to honor such a ticket after the expiration of the
time limit fixed by its own terms, irrespective of any
statements that may have been made by the company's
agent at the time of the sale of the ticket.    The facts
stated show that the present case is not within the let-
ter or spirit of the rule stated.    The ticket in question
did not contain a plain and unambiguous contract; nor
did it contain a contract that was ambiguous merely
because of stating two different periods of limitation.
The stamp upon the back of the ticket performed two
functions—it not only fixed the date from which the
thirty-day limit was to be computed, but it also
showed, by the express declaration of the company
issuing it, the time of its sale—July 9.    If the theory
of the company be correct, that the "L" punch in
the margin plainly indicated that the ticket was of no
validity unless presented prior to July 5, then no
contract whatever was expressed, for an undertaking
made on July 9 to carry a passenger prior to July 5
cannot be called a contract.    If the plaintiff, by the
terms of the ticket, be precluded from recovery, it is
not because her ticket showed a different contract
from that which she was seeking to have enforced,
but because it must be said that the ticket, while at-
tempting to state a contract, was a nullity on its face;
that she was bound to take notice of that fact, and
that, therefore, she could not base a right of carriage
upon it.

We do not think the plaintiff should be required to
suppose that the ticket issued by the railway company
was meaningless.    One possible grammatical con-
struction of the sentence relating to the effect of the
punch-marks would make their presence an indica-
tion that the ticket could not be used under any cir-
cumstances after the expiration of thirty days from

Jevons v. Railroad Co.

the date of its issuance ; but she was not bound to
find a meaning for them.   Since they could not pos-
sibly have been intended to forbid the use after July
5 of a ticket issued July 9, she was justified in regard-
ing them as having been made by inadvertence or
without definite purpose, or as having been waived
or abandoned.   So with the conductor to whom the
ticket was presented.   If he gave credence to the
dating stamp—and he was bound to do so since it
was genuine—he must have known that the ticket
could not have expired July 5, and that whatever
might be the explanation of the punch-marks they
could not have been deliberately made with the pur-
pose of limiting its use to that date.   It cannot be
said that he was required to decide between two in-
consistent dates ; that both could not be correct, and
that there was no sufficient reason for his crediting
the one indicated by the stamp rather than the one
indicated by the punch-mark ; for, as already sug-
gested, the words stamped on the back of the ticket,
in addition to forming a part of the contract, consti-
tuted a plain, unambiguous, unequivocal declaration of
the date on which it was issued.   Granting that the
language printed on the face of the ticket, aided by
the marks of the "L" punch, was as unequivocal a
declaration that the ticket would be void after July 5,
the issuance of the ticket at a later date was conclu-
sive evidence that such declaration had been aban-
doned.   Assuming the facts to be as claimed by
plaintiff, the conductor should have acted upon such
evidence and honored the ticket.   In this respect the
situation is somewhat similar to one that arose in
*Laird v. Traction Co., Appellant*, 166 Pa. St. 4.   A
street-railroad transfer-slip recited that it was good
for but ten minutes after being punched, the time be-
ing indicated by the position of the punch-mark.

When offered for passage it bore two punch-marks, and it was held that the conductor was bound to recognize that designating the later hour.

In *Trice v. Chesapeake & O. Ry. Co.*, 40 W. Va. 271, 21 S. E. 1022, a mileage ticket was sold March 4, 1903, but by mistake was dated March 4, 1902. It recited that it was good for a year from its date, but also that it expired March 4, 1904. It was presented for passage in April, 1903, and refused. The holder was ejected, and brought action for damages. For the reasons already stated the situation was less favorable than that here presented to the claim of the passenger. The court said :

"In the McKay case, 34 W. Va. 65, 11 S. E. 737, 9 L. R. A. 132, 26 Am. St. Rep. 913, we held that where a railroad company agreed to sell a ticket for passage between certain points, but by mistake wrote the ticket for passage to other points, the passenger could not ask passage where the ticket did not carry him, it being apparently not good for the passage demanded ; and the passenger leaving the car, at the command of the conductor, but without force, could not sue in tort, but must sue for the breach of contract by the company in agreeing to carry him that passage, and failing therein by not giving him the ticket contracted for. That case was confessedly somewhat close, but I still think it was rightly decided, and sustained by cases of eminent authority. There the ticket showed nothing for, and all against, the right of the passenger to ride, which he claimed, and was transparently not good—a mere blank or nullity, as to the ride claimed ; while here it is apparently good, more apparently good than bad, and turning out in the end to be good. There is a difference, though it cost reflection to see it. In this case I go upon the theory, which I think is correct, that the plaintiff's grievance is not a breach of contract in agreeing to sell him a ticket for a certain passage, and giving him a wrong ticket, as in the McKay case, but in the fact that he had a ticket entitling him to go to

Huntington as he demanded, and in its wrongful rejection and his expulsion. He had a ticket turning out ultimately to have been good from the start. The confusion as to date arising from the agent's error, without fault in the passenger, does not change its validity." (Page 275.)

A further argument is made that the case was rightly taken from the jury because it was shown beyond question that Gates, during the trip to Kansas City, was fully advised of the necessity for having the ticket corrected before being presented for the return passage. Strong evidence to that effect was presented by the defendant, some of which was not denied in express terms, if at all; but this was offered in support of an affirmative defense, the burden of proving which was upon defendant, and it cannot be said, as a matter of law, that the jury were bound to accept the evidence as true, even if not contradicted. (*Railway Co. v. Geiser*, 68 Kan. 281, 75 Pac. 68.)

A final contention of defendant in error is that the plaintiff was not entitled to use the ticket in question by reason of the provision, already quoted in full, as to its being non-transferable; but no name, of the holder appeared upon the ticket, and, according to the plaintiff's evidence, it was sold for the express purpose of being used by her for the passage from Kansas City to Wakefield. Under these circumstances it cannot be said that the provision of the contract referred to was violated, notwithstanding the fact that the ticket had been used by another person for the trip from Wakefield to Kansas City. The ticket was issued as much for plaintiff's use as for that of any one else.

The judgment is reversed, and a new trial ordered.

All the Justices concurring.