T. H. HARROD *et al.* v. THE LATHAM MERCANTILE AND COMMERCIAL COMPANY.

No. 15,427. (94 Pac. 11.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Title of an Act—Insurance.* The title of chapter 93 of the Laws of 1871 (Gen. Stat. 1901, ch. 50) is sufficient to embrace the provisions contained in sections 18 and 23 of the act (Gen. Stat. 1901, §§ 3381, 3386), including the penalties prescribed therein.

2. ——— *Proceeds of Fines for Breach of Penal Law—Diversion from School Fund.* The provision of section 22 (Gen. Stat. 1901, § 3385) of the act referred to that one-half of such penalty when collected shall be paid into the treasury, for the use of the county, and the other half to the informer, is invalid, being in violation of section 6 of article 6 of the constitution. (Gen. Stat. 1901, § 182.)

3. ——— *Statutory Construction — Part Invalid — Separable Provisions.* This invalid provision is not such an integral portion of the whole law as to be inseparable; the act provides proper means for collecting such penalties, which will be disposed of as the constitution directs, and this does not violate the legislative intent or impair the efficacy of the law.

4. REMEDIES—*Damages Recoverable for Violation of Penal Statute—Insurance.* The penalties above referred to are not so far exclusive as to preclude a party suffering loss from a violation of the statute from recovering damages from the wrong-doer. The decision of this court upon the former hearing is adhered to.

5. EVIDENCE — *Weight of Uncontradicted Testimony — Question for the Jury.* When the burden of proving the material averments of a petition is upon the plaintiff it cannot be determined, as a matter of law, that the jury are bound to accept

the evidence as true, although not contradicted; the weight and sufficiency of testimony to prove a fact thus in issue is for the jury in the first instance, subject to the supervisory powers of the court to be exercised afterward, if found necessary.

Error from Cowley district court; DAVID M. DALE, judge *pro tem.*   Opinion filed March 7, 1908.   Reversed.

*W. P. Hackney,* and *J. T. Lafferty,* for plaintiffs in error.

*A. M. Jackson,* and *A. L. Noble,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: In reviewing this case at a former hearing a judgment in favor of the plaintiff for nominal damages was reversed. (*Latham v. Harrod,* 71 Kan. 565, 81 Pac. 214.) The second trial resulted in a judgment for the plaintiff for $2000. The defendants now bring the case here insisting that the statute relied upon for recovery is unconstitutional, and that in any event the facts do not warrant a recovery.

The validity of the statute was not challenged at the first hearing. It is claimed that the title of the act is not sufficient under section 16 of article 2 of the constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title." (Gen. Stat. 1901, § 134.) The title of this act is "An act to establish an insurance department in the state of Kansas, and to regulate the companies doing business therein." The contention is that the provisions for penalties is not indicated in the title, and *The State, ex rel., v. Bankers', etc., Association,* 23 Kan. 499, is cited in support of that claim. In that case the act was entitled an act to amend certain sections expressly named in the title, while the body of the statute contained a provision purporting to amend

a different section, separate and independent from the subject specified. The title was restrictive, and could not be enlarged by interpretation. The distinction between broad and comprehensive titles and limited and restricted ones was carefully indicated, citing *Bowman, et. al., v. Cockrill,* 6 Kan. 311, as illustrative of the rule applicable where the title is a comprehensive one. The title of the act under review in the case last cited was: "An act to provide for the assessment and collection of taxes," and was held to be broad enough to include a provision fixing a period of limitation for actions to recover land sold for taxes.

In *Woodruff v. Baldwin,* 23 Kan. 491, the article of the code of criminal procedure making provisions for the appointment of trustees for the estates of convicts was held to be embraced in the title: "An act to establish a code of criminal procedure." Mr. Justice Brewer said:

"Evidently the legislature intended by this title one whose scope was broad enough to include the article, and while there is a sense in which the article does not treat of criminal procedure, yet we must impute to the legislature an intent to use the title in a broader sense. . . . And while the constitutional provision is mandatory, yet it is to be liberally construed, and so as not to prevent or embarrass ordinary legislation." (*Woodruff v. Baldwin,* 23 Kan. 491, 494.)

It is not necessary that the title should be an abstract of the entire act, but it will be deemed sufficient if it fairly indicates, although in general terms, its scope and purpose. (*Lynch v. Chase,* 55 Kan. 367, 40 Pac. 666.) The provision of the constitution, while mandatory, must be applied in a fair and reasonable way; otherwise it would become the source of more injury than the ills it was designed to remedy. (*City of Eureka v. Davis,* 21 Kan. 578.) An examination of many of our general laws will show that the incorporation of penalties in acts having only a general and comprehensive title has been common practice in our legis-

lation.  The executor's act has such a general title, and yet it embraces an instance of embezzlement and provides punishment therefor.  "An act in relation to marriage" is another example of this practice.  "An act in relation to roads and highways" includes penalties for obstructing roads, defacing mile-stones, and the like.  Whenever the penalty is fairly incidental to the regulation of the subject expressed it may properly be included in the act without special mention in the title.  The act in question is to regulate insurance companies, and this suggests means to make the regulation effective.  To regulate is to direct by rule or restriction; to govern. (*Otto v. Hare,* 64 Kan. 78, 67 Pac. 444.)  Penalties are plainly incidental to such regulation.  The following cases are illustrative of the scope of such a general title: *In re Pinkney, Petitioner,* 47 Kan. 89, 27 Pac. 179; *La Harpe v. Gas Co.,* 69 Kan. 97, 76 Pac. 448; *The State v. Thomas,* 74 Kan. 360, 86 Pac. 499.

It is also insisted that the act is void because it allows the penalties to be diverted from the school fund, contrary to section 6 of article 6 of the constitution. (Gen. Stat. 1901, § 182.)  This provision, although unconstitutional, does not make the law void; the obnoxious provision alone falls.  It can be easily separated and the law enforced without it.

It was held in *Hardy v. Kingman County,* 65 Kan. 111, 68 Pac. 1078, that a similar provision was not such an integral portion of the whole law as to be inseparable from it, and might fall without destroying the remainder of the law.  The general rule is that only the invalid parts of a statute are without legal efficacy.  When, however, the void and valid parts are so connected in the general scheme of the act that they cannot be separated without violence to the evident intent of the legislature the whole will fail. (*The State v. Smiley,* 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903.)  This statute provides proper means for collecting the penalties.  It then provides for a disposition of such

penalties contrary to the constitutional mandate. This provision being invalid, the fund will be disposed of as the constitution directs. This disposition in no manner violates the legislative intent, nor does it impair the efficacy of the law. The decision in *A. T. & S. F. Rld. Co. v. The State*, 22 Kan. 1, is easily distinguished. That action was brought by the informer to recover the penalties for his own use, and he necessarily failed. It was a direct attempt to enforce the void provision. So far as his interests were concerned, and so far as that provision was involved, the act was void, and it was so declared. The general language used must be interpreted to apply to the particular claim presented and the matters under consideration.

We conclude that the statute in question is not void for either of the reasons suggested. It is argued, however, that the construction put upon this law at the former hearing is erroneous in this: that the penalties prescribed for its violations are exclusive—that an individual suffering loss from any violation of its terms cannot recover damages therefor, and *Jones v. Horn*, 104 Mo. App. 705, 78 S. W. 638, is cited as sustaining that view. Some other authorities are also referred to holding that penalties imposed under various statutes are to be deemed exclusive of any other remedy. (*Utley v. Hill*, 155 Mo. 232, 55 S. W. 1091, 49 L. R. A. 323, 78 Am. St. Rep. 569; *Mack, Appellant, v. Wright et al.*, 180 Pa. St. 472, 36 Atl. 913; *Heeney v. Sprague*, 11 R. I. 456, 23 Am. Rep. 502; *Commonwealth v. Howes*, 32 Mass. 231.) This court, however, adopted the contrary view, sustained by decisions in other states, and, as it was considered, by the better reasoning. The authorities do not appear to be in entire harmony on this subject:

"Two apparently inconsistent rules have been enunciated by the courts in deciding whether damage caused to an individual by the violation of a penal statute creating a new right or duty constitutes a civil cause of action in his favor, or whether the penal cause of ac-

tion is exclusive.  On the one hand it has been held that, as a general rule, the wrong-doer is liable in damages to a party injured by the violation of the statutory duty, notwithstanding he may be subject to the penalty for the public wrong; on the other, that the offense against the state is the only cause of action, and the penal suit in expiation thereof an exclusive remedy.  By the better authority the true test for determining whether or not such penal statutes confer a cause of action for private injuries resulting from the breach seems to be whether the intention of the law is to confer a right upon individuals in addition to creating a new public offense." (1 Cyc. 679.)

The intention òf this law is obvious; it is to protect our citizens who may become policy-holders. (*Morton v. Hart Bros.*, 88 Tenn. 427, 12 S. W. 1026.) The benefits sought are not altogether to vindicate the sovereignty of the state, but to secure safe insurance for our citizens.  When the protection is for the benefit of a class, or individuals of a class, it is held that an individual right of action accrues to the party injured. (*Taylor v. Lake Shore & Mich. S. Ry.*, 45 Mich. 74, 7 N. W. 728, 40 Am. Rep. 457.) This distinction has not always been kept in view, and is sometimes shadowy, but in a general way it may serve to explain the divergence in the decisions.  The supreme court of Iowa, in an action against an insurance agent to recover for loss under a policy issued in a company not licensed to do business in the state, said:

"The statutes regulating the transaction of the insurance business in this state were enacted for the protection of policy-holders, and especially to guard those seeking indemnity against loss from deception by companies incapable of performing their contracts and agents not authorized to bind them." (*Hartman v. Hollowell*, 126 Iowa, 643, 646, 102 N. W. 524.)

The Iowa statute was similar to our own, and the court in the same opinion said:

"Plaintiffs, in the absence of knowledge to the contrary, had the right to assume that both the companies and the defendant had complied with the law.  That

neither had so done must have been known to the defendant, as he had no certificate from the state auditor as their agent. . . . In seeking patronage he must be held to have been cognizant of the law with reference to foreign companies doing business in the state, and the necessity of his being authorized to act by the auditor of state." (Page 648.)

In the same opinion, *Jones v. Horn,* 104 Mo. App. 705, 78 S. W. 638, was referred to and distinguished.

The opinion of the court in *Landusky v. Beirne,* 80 N. Y. Supr. Ct., App. Div., 272, 80 N. Y. Supp. 238, sustains the plaintiff's contention. That was an action against an insurance agent, the policy having been taken out in an unauthorized foreign company. The court said:

"The plaintiff made out a violation of the defendant's contract when he showed that the policy procured for him was not enforceable in New York or Pennsylvania, and that the company by which it was issued refused to pay the amount specified in the policy after receipt of due proofs of loss." (Page 274.)

In *Burges v. Jackson,* 18 N. Y. Supr. Ct., App. Div., 296, 46 N. Y. Supp. 326, it was held that an agent who procured a policy to be issued by a company not authorized to do business in the state was liable for the resulting loss, on the ground of negligence in taking out such a policy, which was held to be void. It is true that in this state such a policy would not be void, for the company is estopped from pleading its own disobedience to law (*Germania Ins. Co. v. Curran,* 8 Kan. 9), but where it is shown that a loss has resulted from such a violation of law, notwithstanding the validity of the policy, the same rule ought to apply. It can make no difference to the policy-holder whether he loses because the policy is void or because it is valueless on account of the insolvency of the company. The wrongful act of the agent in either case causes the loss.

The contention of the defendants that the plaintiff was bound equally with the defendants to know that

Harrod v. Latham.

the company had not been authorized to do business in this state is without merit, for reasons fully stated in the former opinion.    The parties were not *in pari delicto*.

An important question remains for consideration. The verdict was returned upon an instruction to find for the plaintiff.    The claim of the plaintiff was based upon the alleged wrongful act of the defendants, agents of the insurance company, in causing the policy to be issued by a company not licensed to do business in this state, and, it was alleged, insolvent.    A loss by fire was alleged, and the failure of the company to pay after due proofs of such loss had been made.    The defendants admitted the issuance and delivery of the policy, and that they were agents of the company, and partners, as alleged, and denied the other averments of the petition.    Upon this issue the plaintiff was required to prove the loss and its extent, that it made proofs thereof, the fact that the company was not authorized to do business in the state, and its insolvency.    The fact that it was not so licensed to transact business in this state was shown by the deposition of the commissioner of insurance, and by the testimony of one of the defendants.    Evidence of the destruction of the goods by fire, and of the amount of the resulting loss after applying other insurance, and of the delivery of proper proofs of loss, was given.    Evidence was also offered that a judgment against the company for the amount of plaintiff's claim had been duly rendered in a local court in Chicago, Ill., where the home office of the company was located, and of the due return upon the execution that no property could be found to satisfy the same. The resident agent of the company at Chicago testified that when the policy was issued there was not enough money on hand to pay a loss of $2000; that the company had some securities, but whether of sufficient value to make good the loss he was unable to state; that after the loss occurred the company suffered other severe losses; and that its financial condition was not

as good as it had been previous to such losses. This evidence was uncontradicted; the facts, however, which the plaintiff sought to prove by such evidence were in issue.

The weight and sufficiency of testimony to prove a fact in issue is for the jury. It does not necessarily follow that a fact is established because testimony fairly tending to prove it is uncontradicted by opposing testimony. The burden of proving the material averments of the petition not admitted was upon the plaintiff, and it cannot be said, as a matter of law, that the jury were bound to accept the evidence as true, although not contradicted. (*Jevons v. Railroad Co.,* 70 Kan. 491, 78 Pac. 817; *Railway Co. v. Geiser,* 68 Kan. 281, 75 Pac. 68.) Where there is evidence tending to show the constitutive facts advanced by the party sustaining the burden of proof it is for the jury to say whether the evidence is sufficient for that purpose. (2 Thomp. Trials, § 2243.) The jury determine the sufficiency of the evidence to prove the facts, and the court determines the sufficiency of the facts when proved. (*Davis v. Miller, &c.,* 14 Grat. [Va.] 1.) When, therefore, there is no dispute as to the ultimate facts upon which the right of recovery depends, the court may direct a verdict. The rule and its limitations have been stated by this court as follow:

"There are cases where the court may and should instruct the jury in absolute form and direct a verdict in favor of one of the parties. This may be done where a party fails to show something essential to the maintenance of the action or defense, and also where there are no disputed facts for the jury to pass upon. Some of the courts have gone to the extent contended for by the defendant, and held that the court might direct a verdict in any case where a contrary verdict would be set aside as against the weight of the evidence. To this we cannot agree; neither is it in accord with the decisions of this court, where it has been held in effect that if the evidence fairly tends to establish the plaintiff's cause of action or the defense of the defendant, the court cannot withdraw the case

·Kurth v. Bank. ,

from the jury or direct a verdict, but must leave the weight and credit of the testimony with the jury." *(Sullivan v. Phenix Ins. Co.,* 34 Kan. 170, 177, 8 Pac. 112.)

Whenever the testimony must be weighed and conclusions deduced therefrom the jury alone must make the deductions in the ·first instance. *(Avery v. Railroad Co.,* 73 Kan. 563, 85 Pac. 600; *Railway Co. v. Watkins,* 76 Kan. 813, 92 Pac. 1102.) We do not wish to be understood as doubting the sufficiency of the testimony to show the plaintiff's loss or the insolvency of the ·company, but it was the province of the jury and not the court to weigh the evidence and find these facts in the ·first instance, subject to the supervisory powers of the court to be exercised afterward, if found necessary.

Because of the error in directing a verdict the judgment is reversed, and the cause remanded for a new trial.