## FRANK G. WILLARD v. JOHN M. OSTRANDER.

SHEEP SOLD — *Written Contract — Breach of Warranty, Alleged — Oral Evidence Given — Error.* Where, in an action upon a promissory note, the defendant answered that the note sued upon had been given as part of the purchase-price of a flock of sheep, and alleged an express warranty of soundness of the sheep included in the purchase, and set up a counterclaim for damages on account of a breach of the warranty, and upon the trial testified in his own behalf that the contract was verbal, but upon further examination it was disclosed that the defendant received a bill of sale from the agent of the plaintiff that did not contain an express warranty for the sheep sold, *held*, that the oral evidence given in relation to the terms of the contract should have been excluded; that the defendant should not have been permitted to show the representations and statements made previous to the execution of such bill of sale, the presumption of law being that the written instrument contained the whole contract, and should govern, unless fraud had been alleged and proved.

### *Error from Trego District Court.*

THE opinion states the nature of the action and the material facts. Judgment for defendant, *Ostrander*, at the September term, 1888. The plaintiff, *Willard*, brings the case to this court.

*M. D. Hollister, H. C. Dillon, J. Warner Mills*, and *Wheat, Chesney & Curtis*, for plaintiff in error.

*J. B. Hutchinson*, for defendant in error.

Opinion by GREEN, C.: This was an action upon a promissory note, executed by John M. Ostrander, on the 2d day of September, 1885, to Frank G. Willard, for the sum of $965, payable in 1 year and 11 months after date, with interest at 12 per cent. per annum. The answer of Ostrander admitted the execution of the note, but alleged that it was given in part payment for a flock of sheep purchased of Willard; that Charles Weeks, the duly-authorized agent of Willard, sold and delivered to Ostrander 2,173 head of sheep for $5,358, and warranted them to be sound, healthy, and free from all

disease; that the entire purchase-price for said sheep had been paid except the note sued upon and one other note for $965.11, of which $200 had been paid; that the two notes mentioned were secured by a chattel mortgage upon the sheep so sold, but not upon the wool. The answer further alleged that at the time of the sale and delivery the sheep were not in a healthy condition and free from disease, but had a contagious disease known as mange, scab, or itch, all of which was well known to the plaintiff; that at the time of the purchase Ostrander was the owner of a large herd of other valuable sheep, and that the sheep purchased of the plaintiff were bought for the purpose of increasing his herd, and to be kept with them on his sheep ranch in Trego county, all of which was made known to the plaintiff; that the defendant relied upon the representations and warranty of the plaintiff, took said sheep into his possession and upon his ranch, and permitted them to mix indiscriminately with his other sheep, until he discovered their diseased condition; that the disease was communicated to the defendant's other sheep, by reason of which 300 sheep and lambs belonging to the defendant died, and that he was thereby damaged in the sum of $750; that the remainder of this flock, consisting of 1,873 sheep, were depreciated in value in the sum of 75 cents per head, aggregating $1,404.75; that he had been damaged by labor and expenses necessarily incurred in the care of the sheep to arrest the spread of and to cure the disease, for medicine and costs of dipping 2,700 sheep, $200, making a total loss and damage to the defendant in the sum of $2,354.75. The answer further alleged that the notes were the property of the plaintiff, and that they were fraudulent and void in law, and asked judgment that the plaintiff be ordered to bring each of the notes mentioned into court for cancellation; and also asked judgment for $424, the balance due him for his damages after the cancellation of said notes, with 7 per cent. interest; that in case the plaintiff, from any cause, should fail to bring the notes into court for cancellation, then that he have judgment against the plaintiff for the sum of $2,354.75, his damages

and costs, with interest on $1,930, from September 2, 1885. A general denial was filed to the answer. The action was tried on the 19th day of September, 1888, in the district court of Trego county. The jury returned a verdict in favor of the defendant, assessing his damages at $2,191.56.

It is claimed that the defendant's right of recovery, if any, was based exclusively upon a written bill of sale executed by Weeks as agent for the plaintiff in error, and that the court erred in permitting oral evidence to be introduced in relation to the warranty. It seems from the evidence that negotiations had been pending for some time between Ostrander and Weeks, the agent of the plaintiff in error, for the purchase of the flock of sheep in question. The sale was consummated on the 2d day of September, 1885, and the notes and a chattel mortgage were executed, but the cash payment of $1,500 was not made until the 14th day of September, when the following bill of sale was executed and delivered to the defendant in error:

"KNOW ALL MEN BY THESE PRESENTS: That, in consideration of the sum of $5,358, the receipt of which is hereby acknowledged, I do grant, sell, transfer and deliver unto John M. Ostrander, of Wa Keeney, Kas., him and his heirs, executors, and administrators and assigns, the following goods and chattels, viz.: Eleven hundred grade ewes, known as the Willard ewes, said ewes are all over —— to four years of age, except 50, which may be over four years of age; also 433 lambs and 640 wethers, from one to two years of age, all of which are free from disease, and in a healthy condition, to the best of my knowledge and belief: To have and to hold all and singular the said goods and chattels forever. And the said grantor hereby covenants with the said grantee that he is the lawful agent of the said goods and chattels; that they are free from all incumbrances; that he has good right to sell the same as aforesaid, and that he will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

"IN WITNESS WHEREOF, The said grantor has hereunto set his hand this 14th day of September, 1885.

CHARLES WEEKS, *Agent.*

"Executed in the presence of John H. March."

It was claimed by the defendant in error, that after he had

prepared this bill of sale and delivered it to Weeks for execution, he inserted after the words "healthy condition," "to the best of my knowledge and belief;" that after obtaining the signature Ostrander placed the paper in his pocket, and did not examine it until some weeks after, when he discovered that some of the sheep were diseased.   The court below permitted oral evidence to be introduced in relation to the purchase of the sheep, and, when it was disclosed that a bill of sale had been given, refused to exclude from the jury all evidence as to a parol contract.   This is the controlling question in this case.   A careful examination of the evidence in this case convinces us that this purchase was concluded and is evidenced by this bill of sale, and that all parol evidence should have been excluded when it was ascertained that the bill of sale had been executed.   The pleadings were silent as to this instrument.   There was no pretense that fraud had been practiced in its execution, but the claim is made by the defendant in error that this bill of sale is not the contract the parties entered into; that he did not accept it as such contract; that he affirms instead the contract set up in his answer; that after Weeks had executed the bill of sale he put it in his pocket, but did not accept it, because he found that the words "to the best of my knowledge and belief" had been added to the instrument after it had been delivered to Weeks for his signature.   It is not claimed that there was any change in the writing after Weeks had signed it.   The paper remained in the possession of the defendant in error or his attorneys all the time until it was produced in court.   We do not think he can now be heard to say that the bill of sale is not the contract of purchase.   He held it for two years, admitted to several parties that he had a warranty, and never intimated to the plaintiff in error that there was anything wrong with the bill of sale, but refused to let him examine it.   The action of the defendant in error showed that he accepted the bill of sale. It was clearly his duty to read it after its execution and delivery, and he cannot now say that it is not the contract of purchase.   If a change had been made in the instrument without

his knowledge, he should have repudiated the contract as soon as he discovered the change. He admitted that he looked at the contract a few weeks after it had been delivered to him, and found there had been an alteration, but he said nothing about it. He met the plaintiff in error frequently, and paid him different sums of money upon the said transaction, and yet made no objection to the bill of sale. In the case of *Grace v. Adams*, 100 Mass. 507, the supreme court of that state held that a party accepting a receipt was bound by its terms. The court, through Colt, J., said:

"The receipt was delivered to the plaintiff as the contract of the defendants; it is in proper form, and the terms and conditions are expressed in the body of it in a way not calculated to escape attention. The acceptance of it by the plaintiff, at the time of the delivery of his package, without notice of his dissent from the terms, authorized the defendants to infer assent by the plaintiff. It was his only voucher and evidence against the defendants. It is not claimed that he did not know, when he took it, that it was a shipping contract or bill of lading. It was his duty to read it. The law presumes, in the absence of fraud or imposition, that he did read it, or was otherwise informed of its contents, and was willing to assent to its terms without reading it. Any other rule would fail to conform to the experience of all men. Written contracts are intended to preserve the exact terms of the obligations assumed, so that they may not be subject to the chances of a want of recollection or an intentional misstatement. The defendants have a right to this protection, and are not to be deprived of it by the willful or negligent omission of the plaintiff to read the paper."

The same doctrine is stated in Bigelow on Fraud, 525:

"No doubt it would be imprudent, in a sense, not to read or to require the reading of an instrument before signing or accepting it; indeed, the courts would turn a deaf ear to a man who sought to get rid of a contract solely on the ground that its terms were not what he supposed them to be."

The same rule is laid down it *Hawkins v. Hawkins*, 50 Cal. 558; *Bacon v. Markley*, 46 Ind. 116; *Taylor v. Fleckenstein*, 30 Fed. Rep. 103; *Hazard v. Griswold*, 21 id. 178; *Rice v. Mfg. Co.*, 2 Cush. 87; and *Jaeger v. Whitsett*, 3 Colo. 105.

The validity of the bill of sale was not challenged by the pleading, and, the defendant below having accepted it, we think he cannot now be heard to say that it was not the contract. When it was disclosed that there was a bill of sale given at the final consummation of the purchase of this flock of sheep, it was clearly the duty of the court to have excluded all oral evidence in relation to the sale. The rule is stated by the supreme court of Mississippi:

"When parties have deliberately put their engagements in writing, it is conclusively presumed that the whole contract, and the entire extent of their undertakings, were reduced to writing; and oral testimony of a previous, contemporaneous or subsequent *colloquium* is rejected, as it would tend to substitute a new contract for the one really agreed on." ( *Wren v. Hoffman*, 41 Miss. 619, and authorities there cited ; *Kerr v. Kuykendall*, 44 id. 146.)

This court has said in one of the early cases that where one of the main questions in dispute, the initital point in the case, is an alleged purchase, and it is disclosed that the alleged purchase was concluded in and is evidenced by a bill of sale, all parol testimony should be excluded until the writing is produced. The latter is the best evidence. ( *Barnett v. Williams*, 7 Kas. 341.)

In *Dunn v. Hewitt*, 2 Denio, 637, it was held that where a bill of sale had been given for the purchase of personal property, a party making title by virtue of such purchase must produce the writing, and cannot prove the transfer by parol; and where the existence of the bill of sale was first disclosed on cross-examination of a witness who had orally proved the transfer on his direct examination, the parol testimony should be stricken out.

In *Van Ostrand v. Reed*, 1 Wend. 424, it was decided that a party, on the sale of an article, made representations amounting to a warranty, and the sale was consummated by a written transfer without a clause of warranty being inserted. The vendee, in an action of *assumpsit*, was not permitted to show the representations and assertions made previous to the

execution of the instrument of transfer, the presumption of the law being that the writing contained the whole contract. The supreme court of Iowa has enunciated the same rule. All agreements and negotiations preliminary or contemporaneous to the written contract are merged therein, and the party signing a contract without having read it, or taken precautions to ascertain its contents, is bound thereby. (*M. & St. L. Rly. Co. v. Cox,* 76 Iowa, 306; *McCormack v. Molburg,* 43 id. 561; *McKinney v. Herrick,* 66 id. 414.)

It is contended by the defendant in error that the warranty was given after the sale was consummated, and was therefore void. The evidence does not sustain this position. The cash payment of $1,500 was made the same day the bill of sale was executed, and the defendant below insisted that he should have a contract in writing.

The view we take of the law applicable to this case necessitates a reversal, for the reasons stated upon the first assignment of error. It will not be necessary for us to consider the other numerous assigned errors, as they will not likely occur again upon a second trial. It is recommended that the judgment of the district court be reversed, and a new trial be granted.

By the Court: It is so ordered.

All the Justices concurring.