THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. H. A. TRUSKETT et al.

No. 13,090. (72 Pac. 562.)

SYLLABUS BY THE COURT.

1. RAILROADS—Contract with Promoters Construed—Parol Testimony to Vary its Terms Inadmissible. Promoters of a railway organized two corporations (hereafter called the Oklahoma companies) identical in name, under the laws of Kansas and Oklahoma territory, and had begun the construction of a road from a town near the south line of Kansas into the Indian Territory. They had secured from congress an act granting their companies rights of way through Oklahoma and the Indian Territory, which act was twice extended and its provisions enlarged respecting the routes authorized to be built. The promoters were owners of the capital stock in the Oklahoma companies, and as such they made a contract in writing with the Atchison, Topeka & Santa Fe Railway Company containing this provision: ' "The Atchison company agrees that within twelve months of the transfer and delivery to it of not less than eighty-five per cent. of the capital stock of the Oklahoma companies, . . . it will complete or build, or cause to be built, at least thirty-five (35) miles of its railroad from the junction near Bartlesville, Indian Territory, towards Collinsville, Indian Territory, and cause the Oklahoma

companies, and each of them, to assign and transfer to the stockholders . . . all right, title and interest of said companies, and each of them, in or to any aids, concessions or donations obtained along the lines of railroad of said companies as constructed and described in said railway-extension bill." The Atchison company built the thirty-five miles of road mentioned in the contract within the stipulated time, and no complaint was made by the promoters that they did not receive the aids and donations to which they were entitled for that distance. In an action by the promoters for the aids and donations alleged to have been received by the Atchison company along a line 100 miles in length, exclusive of the thirty-five miles of road referred to in the agreement, *held*, that by the express language of the written contract the Atchison company was not obligated to build more than thirty-five miles of railway under the rights of way granted by the acts of congress, and that parol testimony was inadmissible to vary or enlarge the terms of the written instrument so as to cover a line built in excess of that distance.

2. EVIDENCE—*Admission of Parol Testimony.* The mere assertion by a party to a written instrument that uncertainties and ambiguities exist in it will not serve the purpose to open the door for the admission of parol testimony to vary or enlarge its scope, when, by a perusal of the writing, the court can find no equivocal language employed.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed May 9, 1903. Reversed.

### STATEMENT.

THIS was an action for damages arising from an alleged breach of contract. On February 18, 1899, an agreement in writing was made between H. A. Truskett and other persons, referred to hereafter as "the stockholders," on the one part, and the Atchison, Topeka & Santa Fe Railway Company, mentioned below as the "Atchison company," on the other. The relevant parts of the contract are as follows :

"WHEREAS, The Kansas, Oklahoma Central & Southwestern Railway Company, a corporation organized and existing under the laws of the state of Kansas, and

the Kansas, Oklahoma Central & Southwestern Railway Company, a corporation organized and existing under the laws of the territory of Oklahoma (hereinafter called the Oklahoma companies) are engaged in constructing a line of railroad extending from Havana, a point on the railroad of the Chicago, Kansas & Western Railway Company, in the state of Kansas, via Caney, in said state, to Collinsville, in the Cherokee nation, under and in pursuance of the authority granted by an act of congress entitled 'An act to grant right of way to the Kansas, Oklahoma Central & Southwestern Railway Company through the Indian Territory and Oklahoma territory, and for other purposes,' approved Dec. 21, 1893; and of an act of congress entitled 'An act to extend and amend an act entitled "An act to grant right of way to the Kansas, Oklahoma Central & Southwestern Railway Company through the Indian Territory and Oklahoma territory, and for other purposes," approved Dec. 21, 1893,' approved Feb. 15, 1897; and an act of congress recently passed; and

"WHEREAS, The Atchison company is the owner of more than two-thirds of the capital stock of the Chicago, Kansas & Western Railway Company; and

"WHEREAS, The stockholders own or control all the shares of the capital stock of the Oklahoma companies and are desirous of selling the same to the Atchison company on the terms and conditions hereinafter set forth:

"Now, therefore, the parties hereto do mutually covenant and agree with each other, as follows."

Then follows article I, which is not material to the consideration of the case. Paragraph 5 of article II reads thus:

"The Atchison company agrees that within twelve months of the transfer and delivery to it of not less than eighty-five per cent. of the capital stock of the Oklahoma companies, and transfer to it or payment and satisfaction of all outstanding indebtedness and other obligations of the Oklahoma companies, and

any liens or encumbrances upon their property, it will complete or build, or cause to be built, at least thirty-five (35) miles of its railroad from the junction near Bartlesville, Indian Territory, towards Collinsville, Indian Territory, and cause the Oklahoma companies, and each of them, to assign and transfer to the stockholders, the parties of the first part herein, all right, title and interest of said companies, and each of them, in or to any aids, concessions or donations obtained along the lines of railroad of said companies as constructed and described in said railway-extension bill.''

The whole consideration stipulated to be paid by the Atchison company to the stockholders was a sum not to exceed $150,000.

The Kansas, Oklahoma Central & Southwestern Railway Company, of which defendants in error were stockholders, was granted by congress a right of way through the Indian Territory and Oklahoma Territory in 1893. (28 U. S. Stat. at L. 22.) This right-of-way grant was extended by congress in 1897. Section 3 of the supplemental act provides :

''That the said railway company shall have power to construct, equip and operate a branch or extension from its main line, starting at or near Bartlesville, Indian Territory, and running thence in a south or southeasterly direction, a distance of not to exceed thirty miles, to coal and other mineral lands or mines which are operated or may hereafter be operated in the Cherokee nation, Indian Territory, and for such purposes the said railway company is hereby empowered to acquire and occupy a right of way of the same dimensions, by the same methods and for the same compensation as provided for in the original act approved December twenty-first, eighteen hundred and ninety-three.'' (29 U. S. Stat. at L. 529.)

The location of the main line was made more definite in this act, as follows :

''Beginning at any point to be selected by said rail--

way company on the south line of the state of Kansas, in the county of Montgomery,  .  .  .  and running thence by the most practicable route through the Indian Territory to the west line thereof; thence in a south or southwesterly direction by the most practicable route into and through Oklahoma territory to a point on the Texas state line  .  .  .  by way of Bartlesville, Pawhuska, Pawnee, Stillwater, Guthrie, and El Reno, in Oklahoma territory.''

Thereafter, in February, 1899, congress passed another act supplemental to the first two mentioned, in which their provisions were —

"extended for a period of three years from and after December twenty-first, eighteen hundred and ninety-eight, so that said Kansas, Oklahoma Central & Southwestern Railway Company shall have until December twenty-first, nineteen hundred and one, to build the first one hundred miles of its said railway line in said territories, and as described in said above-mentioned act approved December twenty-first, eighteen hundred and ninety-three, and two years thereafter to complete the same.''

It was provided in the last-mentioned act that said railway company should have power to construct and operate a branch line —

"starting at or near Bartlesville, in the Indian Territory, and extending thence in a south or southeasterly direction through the Cherokee Indian nation and through the Creek, Seminole and Chickasaw Indian nations to a point on the Texas state line and on Red river, on the north boundary of said state, and the south boundary of the said Chickasaw Indian nation, to Sherman, in the state of Texas, by way of Collinsville, Okmulgee, Wewoka, and Tishomingo, in the said Indian Territory.''   (30 U. S. Stat. at L. 844.)

The gravamen of the complaint made by the plaintiffs below was that the Atchison company, in July, 1899, organized a railway corporation under the laws

of Oklahoma territory, calling it "The Eastern Okla-
homa Railway Company," and, under that name,
constructed a line of road from the city of Guthrie to
Pawnee, in said territory, a distance of about 100
miles, through or near the town of Stillwater, "under
and by virtue of the rights, privileges and franchises
acquired from plaintiffs by said contract," and that the
Atchison company, in the name of the Eastern Okla-
homa Railway Company, had accepted and received do-
nations, aids and concessions on account of the construc-
tion of said line of railway from individuals, municipal
and other corporations and communities, consisting
of property and money of the value of about $175,000,
to which the plaintiffs below were entitled under
their contract with the Atchison company, as above
set forth.

When plaintiffs below had rested their case, the
railway company interposed a demurrer to the evi-
dence on the ground that no cause of action had been
proved.  The demurrer was overruled, and, electing
to stand thereon, defendant below offered no evidence
in defense.  There were verdict and judgment for
plaintiffs in the sum of $45,000.  The railway com-
pany has come to this court.

*Robert Dunlap*, and *A. A. Hurd*, for plaintiff in error.
*J. H. Dana*, *J. R. Charlton*, *W. N. Banks*, and *O. P.
Ergenbright*, for defendants in error.

The opinion of the court was delivered by

SMITH, J.: At the time the written agreement was
made on which this action was based, defendants in
error, as promoters and stockholders of the Kansas,
Oklahoma Central & Southwestern Railway Company,
had laid out a right of way from Caney, in Montgomery

county, Kansas, to Bartlesville, in the Cherokee nation, and a line from the latter town to Collinsville, a distance of about thirty-five miles, and had done some grading along the route. They were prosecuting the work under the rights of way granted by acts of congress referred to in the statement. The amended petition of plaintiffs below contains this allegation with reference to the contract between the parties :

" That it is not definitely stated in said writing how many miles of said railway were to be constructed by defendant, nor when ; whereas, it was in fact understood and agreed that thirty-five (35) miles should be built, and completed, within twelve months of the time when 85 per cent. of said capital stock of said corporations had been delivered to defendant by plaintiffs, and other things done as in said writing enumerated, and that the balance of said railway, and the branches thereof mentioned in said last-named act of congress, should be built and constructed within the time fixed for the completion thereof in said act of congress."

To remove the alleged indefinite terms in the contract, oral testimony was admitted by the trial court, confined mainly to conversations between the officers of the Atchison company and the plaintiffs below, at and before the time the writing was signed, wherein the former stated, in effect, that all concessions and donations received on lines of road built under the authority of the acts of congress mentioned, beyond the stipulated thirty-five miles, should go to the plaintiffs.

It was the contention of plaintiffs below that the line which the Atchison company aided in building from Guthrie to Pawnee, a distance of 100 miles, known as "The Eastern Oklahoma railway," and for the building of which concessions were received,

was constructed along a route provided for in the acts of congress granting the right of way to the Kansas, Oklahoma Central & Southwestern Railway Company, of which they were stockholders, and, therefore, under the terms of the contract of sale sued on, after its meaning was made certain, that plaintiffs below were entitled to such concessions, aids, and donations. The exact language employed by the parties in the written contract was this :

"The Atchison company agrees that within twelve months of the transfer and delivery to it of not less than eighty-five per cent. of the capital stock of the Oklahoma companies, and transfer to it or payment and satisfaction of all outstanding indebtedness and other obligations of the Oklahoma companies, and any liens or encumbrances upon their property, it will complete or build, or cause to be built, at least thirty-five (35) miles of its railroad, from the junction near Bartlesville, Indian Territory, towards Collinsville, Indian Territory, and cause the Oklahoma companies, and each of them, to assign and transfer to the stockholders, the parties of the first part herein, all right, title and interest of said companies, and each of them, in or to any aids, concessions or donations obtained along the lines of railroad of said companies as constructed and described in said railway-extension bill."

It is not alleged that the words of the instrument are susceptible of two different constructions, or are not intelligible, the charge being that "it is not definitely stated in said written contract how many miles of said railway were to be constructed by said defendant, nor when." We do not think the language of the contract is subject to the criticism made of it with respect to the maximum number of miles of road to be built. It was for an increase of this expressed maximum that plaintiffs below called extraneous testimony to their aid.

3—67 KAN.

The words used convey to our minds a definite and clearly expressed refusal of the Atchison company to bind itself to build, or cause to be built, more than thirty-five miles of railroad along the route described in the railway-extension bill. The thirty-five miles of road which the Atchison company agreed with the stockholders should be constructed was built along the line described in the railway-extension bills in compliance with the contract. The complaint of the plaintiffs below was that the Atchison company built 135 miles of road under the same grants from congress, and that the aids and donations received along the last 100 miles belonged to them.

There is no claim that plaintiffs did not get the aids and donations along the thirty-five miles from the Kansas state line south, but the action was brought to recover the value of the concessions received on the line of road from Guthrie northeast to Pawnee, a distance of about 100 miles, alleged to have been built by the Atchison company under the name of the Eastern Oklahoma Railway Company.

Conceding that the road from Guthrie to Pawnee was constructed and owned by the Atchison company, and that all donations and aids went to it, yet, in order to recover for a breach of the contract, Truskett and his associates must show that by its provisions such aids and donations belonged to them. They cannot do this by enlarging the terms of a written instrument which is not ambiguous or of doubtful meaning, resorting to parol testimony to that end. The mere assertion by a party to a written contract that uncertainties and ambiguities exist in it will serve no purpose when, by a perusal of the writing, the court can find no equivocal language employed.

Again, the writing is sought to be reformed by

parol testimony in respect to the time of performance of those things which it is alleged that the Atchison company agreed to do as shown *aliunde* the contract. It is averred that the limitation of twelve months in which it stipulated to build the road a distance of not less than thirty-five miles should be extended beyond that time as to the number of miles it built between Guthrie and Pawnee to a time limited only by the date for completion, fixed in the last act of congress. This would be a violent wresting of obvious language out of the written agreement, and substituting therefor words which the parties themselves were careful not to use.  The rule of law applicable to the case is old and familiar.  It was well stated in *Naumberg v. Young*, 44 N. J. L. 331, 339, 43 Am. Rep. 380, as follows :

"The only safe criterion of the completeness of a written contract as a full expression of the terms of the parties' agreement is the contract itself.  When parties have deliberately put their mutual engagements into writing in such language as imports a legal obligation, it is only reasonable to presume that they have introduced into the written instrument every material term and circumstance ; and, consequently, all parol testimony of conversations held between the parties, or of declarations made by either of them, whether before or after, or at the time of the completion of the contract, will be rejected.  2 Tayl. Ev. § 1035."

See, also, *Thisler v. Mackey*, 65 Kan. 464, 70 Pac. 334; *Ehrsam v. Brown*, 64 id. 466, 67 Pac. 867 ; *Getto v. Binkert*, 55 id. 617, 40 Pac. 925 ; *Assurance Co. v. Norwood*, 57 id. 610, 47 Pac. 529 ; *Milich v. Armour*, 60 id. 229, 56 Pac. 15 ; *Trice v. Yoeman*, 60 id. 742, 57 Pac. 955 ; *Wilson v. Jones*, 48 id. 767, 30 Pac. 117 ; *Drake v. Dodsworth*, 4 id. 159 ; *Trustees of Southampton*

*v. Jessup*, 173 N. Y. 84, 65 N. E. 949 ; *United Press v.
New York Press Co.*, 164 N. Y. 406, 58 N. E. 527, 53
L. R. A. 288 ; *Tracey v. The Union Iron Works*, 104 Mo.
193, 16 S. W. 203.   In  the  last case cited ( p. 199) it
was said :

"We may, however, properly remark that the adop-
tion  of  the  modern  practice,  admitting  as  witnesses
the parties directly interested in  the action, seems to
add  a cogent  reason  to those existing  at  the common
law  for a  close  adherence to the rule under discussion.
If  the  uncertainty of 'slippery  memory'  furnished  a
ground for excluding such verbal testimony in the days
of  Lord  Coke  (*Countess  of  Rutland  v.  Earl  of  Rutland*
[1604],  Coke's  Reports,. part  5,  26*a*),  how  much
stronger reason for such exclusion to-day, when the in-
fluence of self-interest is so likely to render the memory
of litigating parties more 'slippery' than was that of
the witnesses of olden time."

The  judgment will  be  reversed, with  directions to
the court below to sustain the demurrer to the evidence.

All the Justices concurring.