THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. WILLIAM P. VANORDSTRAND.

No. 13,059. (73 Pac. 113.)

SYLLABUS BY THE COURT.

1. CONTRACT—*Release of Claim for Damages.* A person who, without reading it, signs a written contract releasing his right to maintain an action for damages resulting from an injury occasioned by the negligence of his former employer will be held to have executed the instrument with full knowledge of its contents, when his only excuse for not reading it was that he was "somewhat hurried."

2. ——— *Allusions to Future Employment.* Such a contract cannot be avoided by the party signing it because he relied upon "allusions to future employment" made by the agent of his former employer in the negotiations consummated by the written release, which employment was not furnished him.

3. ——— *Parol Proof Inadmissible.* Such a contract, made without fraud in its execution, full and complete in its terms, unambiguous, reasonable, and plain, but containing no agreement for the future employment of the releasor, cannot be supplemented by parol proof of such an agreement, claimed to have been made in the negotiations concluded by the release, even though it be asserted that such agreement was the inducement for making the release.

Error from Finney district court; WILLIAM EASTON HUTCHISON, judge. Opinion filed July 10, 1903. Reversed.

Railway·Co. v. Vanordstrand.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.

*F. J. Oyler, B. F. Milton,* and *W. R. Hopkins,* for defendant in error.

The opinion of the court was delivered by

BURCH, J. : The plaintiff was a brakeman on one of defendant's freight-trains, and received injuries in alighting from the train while it was in rapid motion, for the purpose of closing a switch. The action was founded upon the negligence of the company's employees in failing to reduce the speed of the train. With other defenses, the company pleaded a contract of settlement and release, of which the following is a copy : ·

"Claim No. 4123.　　(Form 514 Regular.)　　Audit No. 18905. ,
　　　　　　　　　　　　　　　　　　　　　　　　　Series 6.
　　　　　　　　　　　　　　　　　　　　　　Recorded in............

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY,
To Wm. Vanordstrand, Brakeman, Dr.
Dodge City, Kansas.

1899.

Jany. 10. For, and in full release, discharge and satisfaction of all claims, demands or causes of action arising from or growing out of all personal injuries sustained by me in alighting from way-car on train No. 31, while said train was in motion, at La Junta, Colo., June 15, 1898. In making this settlement no promise is or has been made for future employment. Settled in full for $750.

Division
Acc't No. 56.

Examined by　　Approved :　　　　Correct :
　　C. S.　　　J. D. M. HAMILTON,　C. W. RYUS,
　　　　　　　　　　Claims Attorney.　　General Claim Agent.
Approved :　　　Approved :　　　Approved :
J. E. McLEOD,　　　　　　　　J. S. LAUCK,
　For General Manager.　　　　Auditor of Disbursements.

"Received of the Atchison, Topeka & Santa Fe Railway Company, seven hundred fifty & $\frac{00}{100}$ dollars, in

full payment of the above claim. In consideration of the payment of said sum of money, I, Wm. Vanordstrand, of Dodge City, in the county of Ford and state of Kansas, hereby remise, release and forever discharge the company of and from all manner of actions, causes of actions, suits, debts and sums of money, dues, claims and demands whatsoever, in law or equity, which I have ever had or now have against said company, by reason of any matter, cause or thing whatever, whether the same arose upon contract or upon tort.

"I have read the above voucher and receipt and fully understand the same.

"In testimony whereof, I have hereunto set my hand, this 10th day of January, 1899.

WM. VANORDSTRAND.

"Witnesses : C. W. RYUS.

"NOTE.—Claimant must insert in his own handwriting, in the space above the words 'In testimony whereof,' the following: 'I have read the above voucher and receipt and fully understand the same.'

"NOTE.—The above receipt must be dated and signed by the party in whose favor this voucher is made, or when signed by another party the authority for so doing must, in all cases, accompany it; and when signed 'his mark,' signature must be witnessed. When receipted for a railroad company or other corporation or organization, the party signing will please designate his official title and name of corporation or organization. One party signing for another must give his own name in full."

The plaintiff replied admitting the execution of the release, but alleged that it had been procured through the fraud of the company. The jury returned a verdict for the plaintiff, and made answer to special questions submitted by the defendant, certain of which were as follows :

"10. Did the plaintiff write in such release with pen and ink the words, 'I have read the above voucher and receipt and fully understand the same'? Ans. Yes.

"11. Was the plaintiff able to read the release that he signed and to understand it, if he read it ? A. Yes.

"12. Was the plaintiff in any way prevented from reading the release in question before signing it? A. Yes ?

"13. If you answer the question numbered 12 in the affirmative, state in answer to this question ·in what way the plaintiff was prevented from reading the release.  A.  Somewhat hurried.

"14. Was the plaintiff induced to sign the release by any fraud on the part of defendant's agent or agents ?  A.  Yes.

"15. If you answer question No. 14 in the affirmative, state in answer to this question in what such fraud consisted.  A.  It consisted in intimidation, and undue influence was brought to bear on plaintiff, owing to his stringent financial condition, and reliance of plaintiff upon allusion to future employment by defendant's agents, as shown by testimony and correspondence between defendant's agents and plaintiff."

"17. Did the defendant company by its representatives at all times deny that defendant was under legal obligation to pay plaintiff anything?  A.  Yes."

Judgment was rendered on the verdict, and the company brings the case to this court.

The plaintiff's evidence disclosed that he sought the settlement himself, and that it was consummated at the defendant's offices in Topeka, whither he had gone for the purpose of effecting it.  There is no testimony in the record which will support the finding of intimidation.  Intimidation is a different kind of imposition from fraud.  It involves the use of violence or threats of violence, express or implied, as a means of compulsion ; and no question relating to that subject was raised by the pleadings or submitted to the jury by the court.  The only influence, if any, brought to bear upon the plaintiff, or which he claimed in any way induced him to sign the written agreement, was the matter of future employment.  This he very much desired, on account of his financial situation.  The fifteenth finding of fact goes no further, therefore, than to declare that the fraud which induced plaintiff to sign the contract of settlement and

Railway Co. v. Vanordstrand.

release. consisted in allusions to future employment made to him while he was under the stress of a stringent financial condition, and upon which he relied. The plaintiff testified that he partially read the instrument he signed, and that he understood it was a release. After the execution of the contract plaintiff was paid the sum of $750, which he has not offered to return. Upon this state of the record, may the judgment of the district court be upheld?

It needs neither argument nor citation of authority to show that allusions to future employment are insufficient to establish fraud. It is very probable that the jury intended to find no more than is involved in the ordinary meaning of the word "allusions." The written contract denied that any actual promise of future employment had been made. The testimony of an employee of the defendant company, who claimed to have heard the conversations resulting in the settlement, also denied such promise. The conversation of the parties did involve a reference to the matter of future employment, and the agent of the company who conducted the negotiations gave the plaintiff an unsealed letter for him to deliver to the company's superintendent at Pueblo, Col., recommending the plaintiff for employment if it could consistently be furnished him. But if an absolute agreement on the subject had been made, naturally the letter would have been couched in something like positive and definite terms. Therefore, the jury were probably unwilling to go to the extent of finding that any express promise had been made; and accepting the word "allusion" in its ordinary sense of passing, casual, slight or incidental reference, of hint, suggestion, or insinuation, the defendant is entitled to a judgment on the special findings.

Allowing to the jury, however, some ineptitude of expression, and assuming that it meant to find a promise of future employment, can any different result be reached? The plaintiff himself wrote into the contract the statement that he had read it and fully understood it and signed it. He was able to read it. He admitted reading a part of it, and he was able to comprehend its meaning upon a perusal of it. The jury, found, however, that he was prevented from reading it by being "somewhat hurried." There was no finding of any special relation of trust and confidence between the parties; no representation by the agent of the company as to what the paper contained; no misreading of the instrument by such agent; no stealthily-made change in either its form or its substance; no surreptitious substitution of one paper for another; nor any trick or deception in any matter touching the execution of the paper. The plaintiff was simply "somewhat hurried"; that is, hurried "in some degree or measure; a little." (Webst. Dict., "Somewhat.") Against this vague and hazy palliative stands plaintiff's duty to read.

"The very fact of the signature carries some evidence that it was voluntarily and knowingly signed, and there should be something like satisfactory evidence of ignorance or imposition before such instrument can be repudiated." (*Buchanan v. Gibbs*, 26 Kan. 277.)

"The mortgage was complete, except the signature of Mrs. Roach, when presented to her by her husband to be signed, and she at no time asked for it to be read to her. If she was in any manner mistaken or defrauded as to the contents of the mortgage, such result was the consequence of her own gross negligence. She should have demanded that the instrument be read to her. If she relied on the representations of

her husband, it was at her peril alone." (*Roach v. Karr*, 18 Kan. 529, 534, 26 Am. Rep. 778.)

"A party cannot guard against forgery; but if in possession of his faculties and able to read, he can know the character of every instrument to which he puts his signature; and it is a duty which he owes to any party who may be subsequently affected by his act, to know what it is which he signs. By his signature he invites the credence of the world to every statement and promise which is in the instrument he has subscribed; and he is guilty of negligence if he omits to use the ordinary means of ascertaining what those provisions and statements are. If he has eyes and can see, he ought to examine; if he can read, he ought to read; and he has no right to send his signature out into the world affixed to an instrument of whose contents he is ignorant." (*Ort v. Fowler*, 31 Kan. 478, 482, 2 Pac. 580, 47 Am. Rep. 501.)

" The demurrer was properly sustained. It does not appear from the complaint that any relation of especial trust or confidence existed between the parties to the contract, or that the means of knowledge as to the terms and conditions of the writing were not equally open and accessible to both. The care and diligence of a prudent man in the transaction of his business would demand an examination of the instrument before signing, either by himself or by some one for him in whom he had a right to place confidence.

" The fact that the plaintiff was illiterate, and could read manuscript only with difficulty, did not render this precaution less necessary." (*Hawkins v. Hawkins*, 50 Cal. 558.)

" In an action on a note payable one year after date, and to foreclose a mortgage executed to secure it, an answer that the plaintiff represented at the time the mortgage was made that it was payable in five years, and, relying on the word of the plaintiff, the defendant did not read the mortgage or have it read, and that the original agreement was that the defendant should have five years, was not a good answer." (*Bacon v. Markley*, 46 Ind. 116.)

In the light of such law, it would be a judicial antic to declare that a little haste in affixing his signature on the part of a man with the plaintiff's mental capacity and capability will suffice to nullify his contract, if after deliberation he chooses to repudiate it. Therefore, the answers to special questions 12 and 13 furnish no legal justification or excuse for plaintiff's not reading the contract he signed, and he must be held to the same knowledge of its provisions as if he had read it.

The position taken by plaintiff in his reply to the answer was that one comprehensive agreement of settlement was made ; that one of the subjects covered was the matter of future employment ; that the part of the contract relating to future employment should have been included in the written evidence of the agreement, but that it was omitted. There is no correspondence in the record between plaintiff and defendant's agent prior to January 10, 1899, the date of settlement, relating to the employment of the plaintiff by the defendant. Hence, any promise upon that subject inducing the contract was necessarily oral, as the reply indicates. None of the subsequent correspondence on the part of the railway company can be construed into any acknowledgment or recognition whatever of any previous obligation to reemploy the plaintiff. Therefore, the only support of the fourteenth and fifteenth findings of fact was oral testimony, and such was the theory of the reply.

The plaintiff's pleadings and the findings of the jury present the simple case of an attempt to supplement a written contract by parol evidence so as to extend its terms to cover a matter which the instrument itself excludes. Since the jury found that the defendant at all times denied any obligation to pay the plaintiff

anything for his injuries, the instrument signed was not a mere unilateral acknowledgment or admission, but was a contract of settlement and release by way of compromise, which, if valid at all, became binding when the defendant paid to the plaintiff the agreed sum of money. The contract is full and complete in its terms, unambiguous, reasonable, and plain. The plaintiff signed it understandingly and voluntarily. It is, therefore, the measure of the rights of the parties to it. (*Milich v. Armour*, 60 Kan. 229, 56 Pac. 1; *Ehrsam v. Brown*, 64 id. 466, 67 Pac. 867; *Thisler v. Mackey*, 65 id. 464, 70 Pac. 334; *Rodgers v. Perrault*, 41 id. 385, 21 Pac. 287; *Willard v. Ostrander*, 46 id. 591, 26 Pac. 1017; *Railway Co. v. Truskett*, ante, p. 26, 72 Pac. 562.)

It adds nothing to the character of plaintiff's claim to call the final result of the transaction a fraud when it appears that the writing itself was freely signed, with knowledge of its contents. Whether the claimed oral promise of employment was in good faith or false, whether the plaintiff relied upon it or not, and whether any attempt was made to carry it out or not, will not be investigated. If the promise existed at all, it existed as a part of a negotiation which was finally concluded by a writing of a different purport, which writing was willingly executed with full opportunity of knowledge, and, therefore, with full knowledge of its contents. If there was any change of terms the plaintiff will be held to have consented to such change. (*Phares v. The Lake Shore etc. R. W. Co.*, 20 Ind. App. 54, 50 N. E. 306.)

In *Thisler v. Mackey*, supra, it would not have aided the maker of the notes to say that he would not have purchased the stallion and given the notes without the oral promise of the seller to take him back, and that

the seller did not intend to take the horse back when he made the promise. And in *Milich v. Armour*, supra, it would have added nothing to plaintiff's case had he said he would not have executed the written contract except in reliance upon the oral promise of future employment which defendant did not intend to keep.

The truth of any business transaction is best disclosed by the written evidence of it, prepared and signed at the time; and under the limitations recognized in the cases cited above such evidence is conclusive in the courts of this state. In *Coal and Iron Co. v. Willing, Appellant*, 180 Pa. St. 165, 36 Atl. 737, 57 Am. St. Rep. 626, it was said:

"The existence of a contemporaneous parol agreement between the parties under the influence of which a note or contract has been signed, which is violated as soon as it has accomplished its purpose in securing the execution of the paper, may always be shown when the enforcement of the paper is attempted between the parties. It is a fraud to secure the execution of an instrument by representations as to the manner in which payment shall be made, different in important particulars from those contained in the paper, and, after the paper has been signed, to attempt to compel literal compliance with its terms regardless of the contemporaneous agreement without which it would never have been signed at all."

But the rule excluding parol evidence to vary written contracts has never obtained in that state. (*Greenawalt v. Kohne*, 85 Pa. St. 369, 375.) Therefore the decision quoted from cannot be followed.

The judgment of the district court is reversed, with direction to enter judgment for the defendant.

All the Justices concurring.