Fontron v. Kruse.

---

No. 21,137.

L. E. FONTRON, Appellant, v. ADOLPH KRUSE, Appellee.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—Commission on Farm Loan—No Failure of Consideration Proven. In an action on a promissory note the answer alleged that the consideration for the note wholly failed; that it was given in part payment of a commission on a farm loan under a verbal contract by which plaintiff agreed to procure for defendant a $20,000 loan at six percent interest; that the loan obtained bore six and one-half percent interest; that defendant was unable to read, and signed the loan papers believing they provided for six percent interest, and did not discover the truth until he had made two payments of interest, and he prayed that the note be canceled and that he have judgment against the plaintiff for the balance of the commission paid in cash at the time the note was executed. No fraud or mutual mistake was

alleged. *Held*, that the facts do not show a total failure of consideration.

2. SAME—*Parol Evidence of Consideration Incompetent under Pleadings.* Under such an answer, when the defendant's evidence shows that he signed written applications for the loan appointing the plaintiff his attorney in fact to procure the loan at six and one-half percent interest, it is error to permit defendant to offer oral evidence of representations and statements made previous to the execution of the written applications and loan papers, the presumption of law being that the instruments contained the whole contract and should govern, in the absence of any allegation or claim of fraud or mutual mistake. (*Willard v. Ostrander*, 46 Kan. 591, 26 Pac. 1017.)

Appeal from Kiowa district court; LITTLETON M. DAY, judge. Opinion filed May 11, 1918. Reversed.

*W. G. Fairchild*, and *H. S. Lewis*, both of Hutchinson, for the appellant; *J. D. Beck*, of Greensburg, of counsel.

*John W. Davis*, of Greensburg, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was on a promissory note for $300 given by the defendant to the plaintiff in part payment of a commission for procuring a real-estate loan. The answer admitted the execution of the note, but alleged that the consideration for which it was given had wholly failed; that plaintiff had orally agreed with defendant to procure him a loan of $20,000 on his farm in Kiowa county, which was to draw interest at the rate of six percent; that defendant agreed to pay him a commission of $600 for his services; and that he had paid $300 in cash and given the note for the balance. It alleged that when the first installment of interest on the loan became due defendant for the first time discovered that the rate of interest was six and one-half percent, instead of six percent, and that therefore plaintiff had not fulfilled his contract; that defendant was unable to read, and for that reason did not discover when he signed the loan papers that the rate of interest was greater than six percent. He prayed that the note be canceled and for judgment against plaintiff for the $300 cash payment, with interest from the time it was paid, and for costs. The reply was a general denial. The jury returned a verdict in

favor of defendant. The court gave judgment against the plaintiff for $357.72, the amount of the cash payment with interest, and for costs. The plaintiff appeals.

The defendant had the burden of proof. He testified he had lived in Kiowa county thirty-two years, that in company with one Eastman he went to Hutchinson to the office of plaintiff where they informed plaintiff that he desired a loan of $20,000 upon his land, and did not want to pay over six percent; that Mr. Fontron said that he did not know whether he could do that or not; that he would have to find out from the company if he could make that rate; that the regular rate was six and one-half percent; that possibly the company might make it at six percent, and he would call up by long-distance telephone and inform defendant later. He further testified that he had never talked with plaintiff about paying him any commission; that he did not make any contract with him at the time he made the loan, but paid the $300 and executed the note after the $20,000 loan had been paid to him; that after he had received the last of the proceeds of the loan plaintiff told him that Eastman had said defendant would give plaintiff a small commission, and that plaintiff "struck him for' $600." He thought at the time that it was a big commission in place of a little one, but paid $300 cash and gave the note for the balance, thinking he had a six percent loan. He admitted that Mr. Fontron advanced him $12,000 before the loan was completed; that after talking with Eastman he came to the conclusion that owing to the trouble Fontron had with the loan he ought to pay him a commission. On his direct examination the defendant's attention was called to one of the applications made to the insurance company for the loan, in which the interest was stated to be at the rate of six and one-half percent. He admitted signing the applications the day following the conversation in the office after he had been notified by telephone that the company would make the loan. His testimony is that he cannot read, and that the written applications for the loan were signed by him without having them read; that he did not have the note and mortgage read over to him, and signed them without knowing what was in them; that his wife signed them without having them read to her, although she can read and write; that he discovered the six and one-half percent rate when he paid

Fontron v. Kruse.

the first year's interest, and did not discover it when he paid the first interest installment of about $754, which was for part of a year. He admitted that he had never made any complaint to Mr. Fontron after discovering the rate of interest he was paying.

Eastman testified that he introduced Kruse to Fontron, explained the condition of the land, the amount of money wanted, and the rate of interest defendant was willing to pay if he could get it at that rate; that plaintiff said he could n't make it at six percent; that they never had made any as low as that so far west. "I told Mr. Fontron it was a big loan and that he ought to give him a pretty good rate on it, something to that effect." The witness was not positive whether or not he told Fontron the defendant would not make a loan unless he could get it at six percent. He testified that plaintiff called him by telephone that evening and said: "I can make that loan for you," and he replied, "All right, we will be down in the morning." The next morning he went with Kruse to Fontron's office, but did not stay over five minutes, and left Fontron and Kruse talking the matter over. As he started out he heard Fontron ask defendant if he would be willing to pay a small commission to get the loan through, stating as a reason that there was no commission in it to him to amount to anything, and that he was having trouble to get it through. The court overruled a demurrer to the defendant's evidence.

The application was for a six and one-half percent loan, and was in writing, signed by the defendant. It appointed plaintiff agent or attorney in fact for defendant to procure the loan. The mortgages, notes, and coupons were signed by defendant and wife. Plaintiff testified that when the parties called at his office he told them it was a heavy loan to one individual, and that six percent interest was out of the question; that he could not do any better than that at home on the best land; that the rate in Kiowa county was higher than it was in Reno, where the prevailing rate was seven percent, and that a good many loans were being made at seven and one-half percent; but that he would try to get them a loan at six and one-half per cent. His testimony is that after they had studied the matter over they asked if that would include a commission, and he told them it would if he could get the rate from the

party he had in mind. He testified that the next morning
Kruse signed and acknowledged the application, and that
nothing was changed in the papers after he signed them; that
the application was made in November, 1912, and Kruse got all
his money sometime in February, 1913; that while the ab-
stracts were being brought to date, plaintiff advanced $12,000
to defendant to pay for a quarter section of land, and at that
time told him the insurance company paid a very slight com-
mission—less than $100—and that after some talk defendant
finally agreed to pay $600 provided plaintiff would not say
anything to defendant's wife about it, and if plaintiff would
take his note for the amount due after harvest. He testified
that defendant gave him his note for $600 payable September
1, 1913, and came to his office about the date it was due, paid
$300 and the interest, and asked a year's time on the balance,
which he granted, and defendant gave a new note for the $300
balance. He testified that he had never been informed that
Kruse was dissatisfied with the loan or the rate until the sec-
ond note for the commission fell due and after he had sent it
to the bank for collection.

J. A. Fontron, father of plaintiff, testified that when he
arrived at the office that morning his son said to him, in the
presence of defendant, that he had been unable to procure a
loan for less than six and one-half percent, and that Kruse had
agreed to pay that rate, and asked the witness to draw the
application; that Kruse made no remark. The witness drew
up the application, which took two hours to complete, and that
defendant was present all that time.

The answer pleads, in effect, a total failure of consideration,
but the facts alleged show that the consideration had not en-
tirely failed. They show that the note sued upon was given
in part payment of plaintiff's services in procuring defendant
a loan on his farm for a certain amount to run a certain num-
ber of years and to draw interest at six percent; that a loan
was procured for the agreed amount and in all respects satis-
factory to the defendant, except that it provided for interest
at the rate of six and one-half percent, and that plaintiff ac-
cepted and still retains the loan. Having accepted and re-
tained the benefits of plaintiff's services, he is in no position
to claim a total failure of consideration. If the agreement had

been to procure him a loan of $15,000 to run for five years at
six percent interest, and plaintiff had procured a loan of
$10,000 running three years at six percent interest, the de-
fendant, after accepting the loan upon these terms, could not
claim that the consideration for his agreement to pay plain-
tiff for the services rendered had failed. If he had employed
plaintiff to procure for him a thousand bushels of white corn,
and plaintiff had procured for him that amount of yellow corn,
which he received, giving his note in payment of the services
rendered, he would not be heard to say that the consideration
for the note had failed. The undisputed facts show that there
was no agreement to pay any commission until after the serv-
ices had been performed and defendant had received the full
proceeds of his loan; and part of the consideration for the pay-
ment of the commission is conceded to have been additional
services of plaintiff in advancing defendant $12,000 before the
loan was completed, and other services found to be necessary
because of the condition of plaintiff's record title to the land.

The court gave the following instruction:

"If you find from the evidence that the plaintiff agreed to procure
said loan for defendant at the rate of six percent interest per annum;
and if you further find that defendant executed the notes and mortgages
for said loan without knowledge that they bore six and one-half per-
cent interest; and if you further find that the defendant, without know-
ledge that the said loan bore six and one-half percent interest, delivered
to plaintiff the $300 note sued on as payment or part payment for
plaintiff's services in procuring said loan then you are instructed that
the consideration for said note failed and plaintiff cannot recover
thereon."

For the reasons already stated, it is manifest this instruc-
tion should not have been given. Other instructions based
upon the alleged failure of consideration were also erroneous.
The only part of the answer which suggested a defense was
that portion which set up a counterclaim for damages result-
ing from the alleged breach of the contract by the plaintiff,
and the question is whether the defendant, who had the bur-
den of proof, offered any competent evidence to sustain that
defense. On the trial it developed that defendant had signed
a written application for the loan in which he appointed the
plaintiff his agent to procure it at six and one-half percent in-
terest—the exact terms upon which the loan was procured.

He attempts to avoid this written agreement by alleging an oral agreement made before the contract was signed, by which the rate was to be different from that stated in the written application. The answer contains no allegation of fraud or mutual mistake, and no evidence was offered to show either fraud or mutual mistake. The admission of the testimony was in violation of the parol-evidence rule, that all prior negotiations and agreements are regarded as merged in the writing and that the whole contract is presumed to be expressed therein.

"The only safe criterion of the completeness of a written contract as a full expression of the terms of the parties' agreement is the contract itself. . . . and, consequently, all parol testimony of conversations held between the parties, or of declarations made by either of them, whether before or after, or at the time of the completion of the contract, will be rejected." (*Naumberg v. Young*, 44 N. J. L. 331, 339, followed and approved in *Railway Co. v. Truskett*, 67 Kan. 26, 35, 72 Pac. 562.)

"Parol evidence of what was said or done before and at the time of making a written contract is not admissible to alter, vary, or contradict the express terms of the written contract." (*Smith v. Deere*, 48 Kan. 416, syl., 29 Pac. 603.)

(See, also, *Miller v. Edgerton*, 38 Kan. 36, 15 Pac. 894; *Rich v. Cattle Co.*, 48 Kan. 197, 29 Pac. 466; *McMullen v. Carson*, 48 Kan. 263, 29 Pac. 317; *Trice v. Yoeman*, 60 Kan. 742, 57 Pac. 955; *Railroad Co. v. Price*, 62 Kan. 327, 62 Pac. 1001; *Railway Co. v. Vanordstrand*, 67 Kan. 386, 73 Pac. 113.)

The rule is not altered by the fact that defendant was unable to read. (See authorities cited in *Railway Co. v. Vanordstrand*, supra, p. 392.)

This is the invariable rule in the absence of any claim of fraud or mutual mistake. (*Griesa v. Thomas*, 99 Kan. 335, 340, 161 Pac. 670.)

The present case illustrates the necessity for the rule. The witnesses for the plaintiff testified that the rate was stated to be six and one-half percent before the application for the loan was signed. The defendant testified to the contrary. The application for the loan having been made in writing it is the best evidence, and the defendant ought not to be permitted to vary the terms of the writing by parol evidence of conversations leading up to the making of the written agreement. The fact that the written instrument is not the one upon which the

Fontron v. Kruse.

suit is brought does not prevent the application of the rule to the testimony offered. (*Willard v. Ostrander,* 46 Kan. 591, 26 Pac. 1017.) There the action was on a note which the answer alleged was given as a part of the purchase price of a flock of sheep under an express warranty of the soundness of the sheep, and the answer set up a counterclaim for damages on account of a breach of the warranty. It was shown that the bill of sale for the sheep contained no warranty, and it was held error to permit the defendant to show by oral evidence representations and statements made previous to the execution of the bill of sale, because of the presumption of law that the instrument contained the whole contract and should govern unless fraud had been alleged and proved. The application for the loan, authorizing the plaintiff to procure it, being in writing was the best evidence of what the rate agreed upon was, and under the rule in *Willard v. Ostrander,* supra, the court should have sustained the objection to the parol evidence offered by the defendant. Where a mistake is relied upon in the execution of a written agreement it must be a mutual mistake, and moreover, must, as in the case of fraud, be pleaded.

The only reason stated in the answer for his not knowing the contents of the written application and the other loan papers is, that he is unable to read. But that was all the more reason for his not signing them until examined "by some one for him in whom he had a right to place confidence." (*Hawkins v. Hawkins,* 50 Cal. 558, quoted with approval in the Vanordstrand case, *supra.*)

Besides, the defendant should be held estopped to raise this defense at such a late day. The written applications for the loan were signed in November, 1912; he received the $20,000 proceeds in February, 1913; the note was not executed until August 29, 1913, and in the meantime he had made a payment of $754 interest on the loan, and claims not to have discovered what rate of interest the loan drew until he made the second payment of interest at the end of the first year from the time the loan was made; and he made no complaint of any misunderstanding of the facts until he filed his answer in May, 1915. The answer contains no averment of fraud or mutual mistake, and there was no proof of either.

The judgment is reversed and the cause remanded with directions to sustain the demurrer to the evidence and render judgment in plaintiff's favor for the amount due on the note.