No. 23,202.

## C. N. HAZELTON and SARAH J. HAZELTON, *Appellees,* v. DAVID CHAFFIN, *Appellant.*

### SYLLABUS BY THE COURT.

1. WRITTEN LEASE—*Oil and Gas .Lease—Unambiguous—May Not Be Varied by Parol Evidence.* Rule followed that in the absence of pleading and proof of some species of fraud or mutual mistake a plain and unambiguous written contract must be enforced according to its terms; and neither pleading nor proof of a parol understanding at variance with the written contract can be considered.

2. SAME—*Action for Rent—No Legal Defense Shown.* Where the·grantee of a written contract to lease land for the development of gas and oil undertakes to pay rent until a well is commenced on the leased property, it is no defense to an action for the rent for the defendant to plead that he had no personal interest in the leased premises and that he had merely taken the lease in his ·own name as trustee or agent under an oral agreement to assign the lease to another party upon the happening of a future event. To be of any effect, such understanding should also have been reduced to writing and incorporated in the contract.

3. SAME—*Effect of Assignment of Lease.* An assignment of a lease does not annul the lessee's obligation to pay rent unless the contract contains a stipulation to that effect.

Appeal from Elk district court; ALLISON T. AYRES, judge. Opinion filed May 7, 1921. Affirmed.

*C. W. Spencer,* of Sedan, for the appellant.

*S. H. Piper,* and *W. B. Grant,* both of Independence, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: ·This was an action for rent due on an oil and gas lease. Judgment was rendered for plaintiffs on defendant's answer and admissions, upon the ground that these constituted no defense.

Plaintiffs' petition alleged that they were the owners of certain lands which they leased for purposes of gas and oil development under a written contract signed by them and by defendant, in which among other matters it was provided—

"The party of the second part agrees to complete a well on said premises within one year from the date hereof, or pay at the rate of one hundred dollars for each additional three months such completion is delayed from the time above mentioned for the full completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rents under this provision during the remainder of the terms of this lease."

Plaintiffs alleged that defendant did not complete a well on the premises within one year, and that he had never drilled for gas or oil, and that the rent due under the lease had not been paid. They prayed judgment for the rent.

Defendant's answer admitted the execution of the lease, but alleged that he never had any personal interest in the transaction; that in November, 1915, the defendant and others were engaged in an effort to procure development of gas and oil in the vicinity of plaintiffs' land, and that they induced certain parties, McGinnis & Company, to survey the territory thereabout for gas and oil, and that McGinnis & Company agreed that if defendant and his associates would secure a block of leases in that neighborhood, including a lease of plaintiffs' land, they, McGinnis & Company, would put down a test well; and that pursuant thereto the defendant and his associates went about securing leases, including the one in controversy, which were all taken in the name of defendant, in trust or as agent, to be held by him until the test well should be commenced by McGinnis & Company, when "it was understood he would make and deliver said leases" to McGinnis & Company. Defendant alleged that this arrangement was fully explained by letter and orally to plaintiffs; and that defendant's brother—

"At that time explained to the plaintiff that said David Chaffin did not have any interest in said oil and gas leases whatever and would not have any interest whatever in the oil and gas leases which the plaintiff was executing to him, except that he was to hold them (as trustee) and in his name until a test well was commenced on this block of leases.

"That with this understanding the plaintiffs executed and returned said oil and gas lease, a copy of which is set out in plaintiffs' petition."

Defendant also alleged that these arrangements had been carried out and that a test well had been drilled within a half mile of plaintiffs' land; and—

"That defendant never at any time had any interest in and to the oil and gas lease sued upon in plaintiffs' petition, except that he was intrusted by the plaintiffs to hold the same for the protection of plain-

tiffs until such time as a test well was commenced on the block of leases in which plaintiffs' lease was included and then to transfer and deliver the same.

"That with the transfer and delivery of said oil and gas lease to the said W. F. McGinnis and Company the defendant's trust was fully carried out and complied with and that he has no further or other legal liability."

At the trial defendant admitted in open court that the rent specified in the lease had not been paid and that no well had been drilled on plaintiffs' leased premises.

Upon this admission and defendant's answer the court gave judgment for plaintiff.

Was this correct? When judgment is given on pleadings and admissions, such pleadings and admissions are entitled to most favorable consideration. In such a case, every fact well pleaded is taken as true, but no such effect is given to facts not well pleaded. Here the defense was a parol agreement at variance with the written contract. Such a defense is never permitted unless some species of fraud or mutual mistake is also pleaded and proved. Where there is neither plea nor proof of fraud or mutual mistake, it is conclusively presumed that the written contract contains the whole terms and the only terms of the contract; and a person who has thus obligated himself cannot defeat a recovery on such contract by parol evidence of matters at variance therewith. Were the rule otherwise the making of a written contract would be a vain and useless undertaking. This has always been the law in this state. (*Fort Scott Coal Co. v. Sweeney,* 15 Kan. 244; *Sexton v. Lamb,* 27 Kan. 426; *Hopkins v. St. L. & S. F. Rly. Co.,* 29 Kan. 544; *Miller v. Edgerton,* 38 Kan. 36, 15 Pac. 894; *Willard v. Ostrander,* 46 Kan. 591, 26 Pac. 1017; *Brown v. Trust Co.,* 71 Kan. 134, 80 Pac. 37; *Fontron v. Kruse,* 103 Kan. 32, 38, 172 Pac. 1007; *Insurance Co. v. Whitney,* 105 Kan. 237, 182 Pac. 645. See, also, 13 C. J. 524, 525.)

Appellant seems to think that the force of this proposition can be avoided by arguing that he took the lease merely as a trustee without any personal interest in the contract. The contract is simple and unambiguous in its terms; it gives no hint or intimation of the creation of a trust; nor within its terms can there be discerned any qualification or limitation of the defendant's obligation to pay the quarterly rent. While

defendant's brother may have fully explained to plaintiff the project to collect a number of leases for the purpose of prospecting for and developing gas and oil and that defendant should hold the leases until a well was developed by McGinnis & Company and then assign the leases to them, the written contract between plaintiffs and defendant is unqualified and unencumbered by any reference to those arrangements or those conditions. If these facts were pertinent to the contract, defendant should have incorporated them in the written instrument to which he attached his name. If he did not intend to pay rent after the first year until a well was commenced on plaintiffs' property he ought not to have signed his name to a contract binding himself to pay such rent. It should be borne in mind that courts do not make contracts. They merely enforce the contracts to which the contracting parties have voluntarily bound themselves.

Nor does the fact that defendant assigned this lease to McGinnis & Company discharge defendant's obligation to pay the rent. The text of the lease indicates that its possible assignment was contemplated by the parties, but there is no agreement therein on the part of plaintiffs to look only to such possible assignee for their rent. If some such assignee had paid, doubtless that would be a sufficient payment to discharge the defendant; but it would be a queer doctrine to declare that the grantee of an oil and gas lease—any more than any other lessee, could avoid his obligation to pay rent by assigning his leasehold to another tenant. In *Harris v. Strickler*, 86 Kan. 266, 268, 120 Pac. 343, it was said:

"An assignment does not annul the lessee's obligation on his covenant to pay rent, although the lessor has consented to the assignment and collected rent from the assignee. (24 Cyc. 1177b; *Grommes et al. v. St. Paul Trust Co. et al.*, 147 Ill. 634, 35 N. E. 820, 37 Am. St. Rep. 248.)"

The record contains no error, and the judgment is affirmed.