N. H. REMY, *Appellee*, v. THE FOWLER PACKING COMPANY et al. (THE FOWLER PACKING COMPANY, *Appellant*).

No. 18,219.

### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Personal Injuries—Whether Written Release was Fairly Made was for the Jury.* Under the circumstances of which there is evidence in this case it is a question of fact whether or not the written release was executed with a fair understanding of its provisions and is valid and conclusive of the rights of the parties.

2. ——— *Same.* The evidence of the appellee was evidently believed by the jury and their verdict was approved by the

court in rendering judgment in accordance therewith, and, following the well-established rule, we can not reverse the judgment here.

Appeal from Wyandotte district court, division No. 2. Opinion filed July 5, 1913. Affirmed.

*L. C. Boyle, Charles M. Howell, William T. Woodford, Joseph S. Brooks,* all of Kansas City, Mo., and *J. K. Cubbison,* of Kansas City, for the appellant.

*J. E. McFadden,* and *O. Q. Claflin, jr.,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellee brought this action against the appellant, the Fowler Packing Company, and the St. Louis & San Francisco Railroad Company to recover damages for personal injuries alleged to have been received while in the discharge of his duties in taking the temperature of refrigerator cars which had been placed by the railway company upon appellant's sidetrack for the purpose of being loaded with meat and other articles for transportation. It is alleged that it was the custom and duty of the appellant to have a watch kept and to inform the appellee when the cars in which he was working were to be moved; that the appellant neglected and omitted to discharge its duty in this respect, and that while appellee was about to pass from one of the refrigerator cars to another an engine of the railway company was run upon and against the refrigerator cars violently, and by the impact a door was thrown against him and bruised his head and face and body, his right arm was severely wrenched and the bone thereof broken in two places, by reason whereof he was caused great physical pain and mental anguish, and the injury to his arm, legs and

nervous system have become permanent, all to his damage in the sum of $5000.

The appellant answered by a general denial; also, that if any injury occurred as alleged, the cause of action had been fully compromised and fully settled by a written release, a copy of which was attached to the answer; also, that the defendant was guilty of contributory negligence.

The plaintiff in reply denied generally the allegations of the answer and alleged that if the appellant had any writing or paper purporting to be a release signed by the plaintiff that the same was obtained and procured by means of false and fraudulent representations, acts and conduct of the appellant and its agents, attorneys, and servants.

In the reply it was alleged that one McClain, who was the superintendent and vice principal of the appellant, and one Beggs, who was then assistant superintendent, knowing that appellee had received severe and lasting injuries by the negligence of the appellant, verbally contracted that if he would refrain from bringing suit against the appellant the appellant would give appellee a lifetime job at the wages he was receiving at the time of his injury.

There is no complaint urged by the appellant against the pleadings nor of the instructions given by the court. A demurrer by the defendant railroad company to the petition, so far as it was attempted to state a cause of action against the railroad company, was sustained, and there is no appeal from such ruling.

Only one question is presented in appellant's brief, viz.: Is the evidence sufficient to sustain the verdict and judgment for the appellee?

The appellant contends that the reasons assigned by appellee for avoiding the written release executed by him are insufficient and calls the attention of the court to *Railway Co. v. Vanordstrand,* 67 Kan. 386,

73 Pac. 113, and to several other decisions of this and
other courts.   It is especially contended that the doc-
trine announced in the Vanordstrand case deter-
mines the decision of this case.   There is a wide dif-
ference between the circumstances under which the
settlement was made in that case and in the other cases
cited and the circumstances attending this settlement,
but it is unnecessary to trace the distinctions further
than to say that as a question of law, under the evidence,
the appellee is not debarred from showing his former
agreement with McClain, the superintendent, and that
he relied thereon, if his condition of mind, from his
pain and the effects of opiates and intoxicants taken,
was such that at the time of signing the release he was
incapable of understanding the effect thereof or of giv-
ing attention to the language thereof when it was read
to him.   Under all the evidence on this point it was a
question of fact for the jury whether the appellee en-
tered into that contract with a fair understanding of
its import and was bound thereby, and whether he did,
in fact, rely upon his alleged agreement with McClain
for employment for life.   From the verdict of the jury
it must be assumed that they found those questions in
favor of the appellee.

The evidence of the conversation between Remy and
McClain is substantially as follows: Appellee said to
McClain, "I am hurt awful bad and I am suffering very
bad, and I think you ought to do something for me."
McClain said, "Well, we aim to do you right."   Appel-
lee then said, "Well, I expect pay for my time while I
am injured, and I expect a lifetime job out of this, and
I need some money.   I want some money to help me
through while I am in such a bad fix."   McClain said,
"Well, we will do right by you."   Appellee then said,
"Well, Mr. McClain, what do you advise me to do?"
McClain said, "I will tell you, I would rather not advise
any further on this, only we will give you the work all

right. You go up town, see—to our lawyer, a man up there, see, he will fix you up." Appellee then said, "I need a little money to help me through with my misery and trouble." McClain said, "Go up there, and whatever he does is all right, will be all right, go up and see him." McClain then called a man from another office and said to him, "See, you take Mr. Remy up to Boyle & Howell's office, our lawyers there, and take him up there, and tell them to do something for him." Appellee, being further questioned, said that McClain said to him, "Yes, we will treat you right, we will give you work, as long as you live, and do the right thing. Yes, you go on up there, what those men tells you will be all right." Appellee then said to McClain, "I will expect a lifetime job at the wages I am getting, the same as I have been drawing." McClain then said, "Yes, sir; we will treat you right."

The appellee testified that when he went to the law office and at the time he signed the release he was suffering great pain and had been taking opiates and whisky on the advice of his physicians and was intoxicated; that he was unable to concentrate his mind when the release was read to him and understood that it was only a receipt for the money then paid to him.

From this, if believed, the jury might well conclude that the superintendent did not send the appellee for a full settlement of the claim against appellant but only for money to sustain him and pay his expenses during his inability to work and that appellee so understood it. Also, that if the appellee went to the lawyers only for money for temporary purposes and received the sum of $200; that in his condition he might have been misled although the release was fairly read to him.

The fact that Remy only asked for $200, as testified to by Woodford with whom the transaction was had, lends probability to Remy's version of his understanding. It may have seemed incredible to the jury that

he should have proposed and intended to release a claim against appellant for that amount when the jury, after hearing all the evidence of each party, returned a verdict in his favor for $3000, after offsetting the $200 paid to him by Woodford. Again, his subsequent action, which is not disputed, in presenting himself at appellant's packing house for work as soon as he was able and working until he was told he must work for less wages than he had received before the accident, may well have been regarded as consistent with and corroborative of his alleged understanding of the transaction.

The appellee himself was the only witness called upon his side of the case, and his evidence was disputed as to several statements therein by several witnesses called by the defense, but it is the province of the jury to determine the facts after hearing all the evidence and considering all the circumstances disclosed. The release being signed and acknowledged as the free act of the appellee is conclusive of the rights of the parties if fairly executed with knowledge of its contents and the burden of impeaching it rested upon the appellee. Yet we can not say that the verdict, which was approved by the court, is not sustained by the evidence.

The judgment is affirmed.